# JOHN A. METCALF
## *v.*
## SMALLWOOD N. REDMON.

1. PARTNERSHIP—*as between the parties—what is not.* R., residing in Mississippi, made an offer in writing to M., a resident of Illinois, to form a co-partnership in the buying and selling of twenty horses, the same to be purchased by M. and sent to R., to be sold by him in Mississippi, which said offer M. accepted, and afterward in transacting the business, purchased twenty-seven horses, all of which he disposes of at other places, and without the knowledge of R., and a loss occurred,—*Held,* that M. could not maintain a bill as partner of R. for an accounting, or contribution for the loss sustained.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. OLIVER L. DAVIS, Judge, presiding.

This was a bill in chancery filed in the Circuit Court of Edgar county, by the plaintiff in error, against the defendant in error, for an accounting and settlement of an alleged co-partnership between them. After the issues were closed, the case was sent by agreement to the Circuit Court of Douglas county, and there referred to a special commissioner to report the evidence, which, after being taken and reported, a hearing was had, and the court dismissed the bill, with costs to the complainant, to reverse which, a writ of error was sued out of this court.

The facts necessary to an understanding of this case, are fully stated in the opinion.

Mr. JAMES A. EADS, for the plaintiff in error.

Messrs. BALLARD SMITH, A. J. HUNTER, and JOHN SCHOLFIELD, for the defendant in error.

Mr. Justice Breese delivered the opinion of the Court:

A few obvious considerations will dispose of the case presented by this record.

It is claimed by the bill exhibited in this case, that a partnership existed between the plaintiff in error and defendant, to purchase horses in this State, and send them to a southern market for sale, the purchase to be on joint account, and the parties to be equal sharers in the profits and losses.

The proof of this partnership is alleged to consist in, and to have been formed by, letters passing to and from the parties, the first one containing the proposition, emanating from the defendant in error, and dated Canton, Miss., September 1st, 1858, and received in due course of mail by the plaintiff in error then residing at Paris, in Edgar county, in this State.

A resort to the letter of September 1st, 1858, written by defendant in error, is necessary in order to arrive at a knowledge of the kind of partnership said to have been formed.

In this letter, defendant says, he was too early in the market to sell his mules, but that there was a great demand for horses, which could be sold at large figures, and then says to plaintiff, "If you can buy twenty good work horses right, and send them by Harry and Joe, I think we can make a fine profit on them; or good saddle horses will sell well." * * * He then writes: "Now if you can and will buy them I am in half for every thing, and we will be full partners. Let me know immediately, and I can have them all spoken for. Ship them to Vicksburgh. Put them on a boat at St. Louis. If you can't buy twenty, buy me ten, and send them by Joe. I will need a hand very bad in a few weeks. If you can't buy them, show this to C. and T. L., let them buy some, for there is a good opening for a speculation in horses."

He adds this postscript: "Mr. John Metcalf, if you purchase any horses for I and you, give our note for the money, and if you buy for me alone, sign my name, and if you only buy ten, send them by Joe."

This letter was received by Metcalf on the 10th of Septem-

ber, and on the 13th of that month he wrote Redmon, acknowledging the authority to buy twenty good horses; that he had bought eight, and in a few days would have all he wanted, and asking Redmon to give him all the time he could to get the horses ready for market, that he was buying the horses in partnership, and would go equal parts in buying, and in profits and loss, etc.

This letter was received by Redmon about the 5th of October, and on the 6th, he wrote Metcalf thus: "You write me, that you have bought eight horses, and I expect by this time a good many more. I think that good saddle horses, and good single buggy horses will bring a fair price and sell quick. I know of five horses I could sell now," etc.; wants horses of fine size, and young ones at that, etc. He then states, that much sickness prevails there, and then adds, "don't buy any more horses unless you buy them very low. I think in one month, or six weeks, times will be a good deal better here, times and health will get better. There is a few horses and mules coming in every day, then I can't tell what we can do, but as you have the horses we must sell them; you must be your judge. So you may ship or drive them. You must be here in six weeks. If you ship them, you must ship them from St. Louis to Grand Gulf," where he would meet them any day; that if they came by land, he would meet them at Canton, and again directing, that Joe should come with them, and he thought he could sell them in a short time, but did not known what expenses twenty horses would be at.

The persons named Harry and Joe in these letters, are shown to be Harry Metcalf, a son of the plaintiff, and Joseph Redmon, a brother of the defendant.

This is all the evidence going to the fact of a partnership between these parties, and if one is established, it was special, and for a specific isolated transaction, and the field of its operations divided between this State and the State of Mississippi.

Other evidence introduced before the master shows, that the plaintiff in error, from the 11th of September to the 25th of October, bought twenty-seven head of horses for the concern,

and charged the cost, expenses, and his own services on books kept by himself, to the account of Metcalf and Redmon, showing, as he stated the amount, an outlay of $5,456.35, and proceeds amounting to $3,594.45, making a loss of $1,861.90. These horses were bought by the barter of a wagon, some lumber, goods and accounts from plaintiff's store and notes due him, no notes of Metcalf and Redmon having been given in a single instance. Fourteen of these horses were shipped on the 21st October, by plaintiff, to St. Louis, in charge of his son Harry and A. Stotts, and, on the 5th of November, the remaining thirteen. Joe was ready to go with them, but plaintiff did not accept his services. Stotts was instructed to sell the horses at St. Louis, unless plaintiff should otherwise order, and he was furnished with a list of prices in the event he might conclude to send them south to Redmon. Harry being in doubt where Redmon was, and there being a report of his death, sold twelve of the horses in St. Louis without loss, and shipped the remainder back to Paris, from which place they were, in March, 1859, shipped south by Metcalf. Stotts says, it was the intention to sell the horses in St. Louis at fair prices, and if they could hear from Redmon, to ship them south to him. The horses were called Metcalf's horses at St. Louis, and were shipped by rail from Paris to St. Louis, in the name of John A. Metcalf. It was proved by a Mrs. Mounts, that Metcalf told her that he was buying the horses for himself and no one else, and was buying them with old notes and accounts.

It was proved the horses could not have been bought as low with Metcalf and Redmon's notes, on time.

We are not disposed to give this fact any prominence in this case, for it is apparent if Metcalf was enabled to purchase the horses, without the use of his name and Redmon's, and on as good terms, it is not for Redmon to complain, even though it conferred a special benefit on Metcalf, by enabling him to convert property and notes and accounts belonging to, and due to himself, into horses, to be charged on joint account.

But we think the facts in this case show, if there was a partnership in the transaction, it was a partnership on certain

terms, with which Metcalf did not comply. In the first place, the partnership was in twenty horses, to be bought, and not a hoof more. Secondly, they were to be shipped or driven to Redmon, in the State of Mississippi. If shipped by the river, he would be at Grand Gulf, there to receive them; if taken by land, then he would be at Canton to receive them. The field of profit on the adventure was fixed by both parties in Mississippi, and the sale to be made under the eye and judgment of Redmon, assisted by the son of plaintiff, and by the brother of defendant, to whose joint care the horses were to be committed for that distant market. Thirdly, the horses were shipped by Metcalf, in his own name, to St. Louis, and were there called Metcalf's horses, and there twelve of them were sold in direct violation of the agreement of the parties. It was never in the contemplation of Redmon, that the market for the horses should be St. Louis, and the reason for making that place the market is not a valid one. It is in vain to say the son and Stotts did not know where Redmon was, for he had been most explicit in his directions at what point to land the horses. Had the plaintiff sent them, as directed, to Mississippi, then, as to twenty horses, Redmon would be liable, as a partner, for all losses on their sale; but selling twelve of them in a market for which they were not bought, and without the supervision of Redmon, was no compliance with the agreement. Again, the remaining thirteen were kept on hand at great expense, by Metcalf, after being returned from St. Louis, until March, 1859, and then taken south, by Metcalf, on his own account, but not to Redmon. The whole tenor of the correspondence between these parties shows, the horses were to be sent south immediately after their purchase, for a speedy sale; that they were to be sold in Mississippi, and the profit and loss then to be adjusted.

Had Metcalf acted on the agreement, as it was made, and according to its terms, then it might with strong reason be urged, that a partnership actually existed; that it was fairly " launched," and corresponding rights, obligations and duties then created. But the contrary appears, and no ground

remains on which the plaintiff's claim to have an account, can rest.

We are satisfied the Circuit Court decided correctly, in dismissing the bill, and we affirm the decree.

*Decree affirmed.*