# HOLGATE v. DOWNER.

PLEADING AND PRACTICE — PARTNERSHIP — COUNTERCLAIM AND SET-OFF — COSTS.

1. It is not the office of a motion to strike out to assail an entire cause of action or defense on the ground of the insufficiency of the facts therein contained. Such an objection should be raised by demurrer.

2. It is the general rule, both in law and equity, that joint and separate debts can not be set off against each other.

3. A partnership inter se never results by implication or operation of law. As between the parties themselves, there must be a lawful and valid agreement to enter into partnership, and the agreement must be executed. An executory contract to form a partnership is not a partnership.

4. Like all other contracts, a contract of partnership must be founded upon a consideration, either of mutual promises or contributions.

5. H. and D. (the defendant) agreed to buy cattle on joint account. For that purpose a third party advanced to them $1,500, and D. contributed $1,000. These sums were deposited to the credit of D. and H. in a bank. H. was to furnish $700, and personally to attend to buying the cattle. Without contributing his agreed share of the capital, H. withdrew $1,500 from the account at the bank, by a check in his own favor, made a check for $150 to his wife, and one for $25 to another party, and absconded and abandoned the enterprise. *Held,* that the partnership had not been consummated, and the relation of partners as between the parties did not exist. *Held further,* that the absconding party had no interest in the funds remaining to the credit of D. and H. in the bank.

6. Although by the deposit in a bank, the title to the money passed to the bank, and the relation of debtor and creditor was created between the bank and the depositors, and the bank was protected in paying the checks of H. drawn in the firm name, in the absence of notice to the contrary; the withdrawal by H. of a sum equal to that advanced by the said third party, and his abandonment of the business, left D. solely entitled to the money represented by the balance of the ac-

count at the bank, which was less than the sum contributed by him and deposited in the account.

7.    H. having no interest in the funds remaining in the bank, after withdrawing the sum of $1,500 therefrom, the partnership not being consummated. the claim against plaintiff, the wife of H., for the money personally received by her to her own use upon the check in her favor, was not a claim held by H. and D. jointly, but was a claim held by D., and he is entitled to have the same set-off in his favor against plaintiff in an action upon his individual note.

8.    The check to plaintiff, wife of H., being signed in the name of D. and H., she was placed upon inquiry, and she must have known that it did not represent the individual funds of her husband.

9.    The statutory provision (R. S. of 1887, Sec. 3145), that when a judgment is reversed in part and affirmed in part, the court may apportion the costs in such manner as it deems equitable applies only in the first place to the costs accruing on error, and is only applicable to proceedings in error, and does not relate to, or govern cases taken by appeal from a justice of the peace to the district court, and there tried de novo.

10.    Where the plaintiff recovers a judgment for one hundred dollars or more, after the allowance of a counterclaim or set-off, he is entitled to recover costs.

11.    In justice court plaintiff had judgment for $150 and costs. Defendant appealed and on a trial de novo in the district court plaintiff recovered judgment for $120, after allowance of a set-off.  *Held*, that plaintiff was entitled to recover costs in both courts.

[Decided June 30, 1899. Commenced in Justice Court February 10, 1898.]

ERROR to the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

Action on a promissory note brought in justice court. Defendant pleaded a set-off. Plaintiff recovered judgment for $150 and costs, and defendant appealed to the district court. In that court judgment was rendered for plaintiff for $120, and the latter ordered to pay all costs. Plaintiff prosecuted error.

*J. F. Hoop* and *Alvin Bennett,* for plaintiff in error.

The claim set up by defendant as a counterclaim was one held by him and plaintiff's husband as partners, and can not be urged in this suit or used to reduce the amount of plaintiff's recovery. (R. S., Sections 2458, 2459; Berthold v. O'Hara, 25 S. E., 845; Thompson v. Lowe, 111 Ind., 272; 17 Ency. L., 1248; Sindelar v. Walker, 27 N. E., 59.) It was error to assess plaintiff with the costs. (R. S., Sec. 3495).

No appearance for defendant in error.

POTTER, CHIEF JUSTICE.

Plaintiff in error, R. M. Holgate, brought suit in justice court upon promissory note for $150, executed by George Downer, defendant in error, dated January 1, 1897, and payable to the plaintiff in error ninety days after date.

To plaintiff's petition defendant filed an answer as follows:

"Comes now the defendant, and for his answer to the petition of the plaintiff herein admits the execution and delivery of the note set out in plaintiff's petition, but denies each and every other allegation in plaintiff's petition contained.

"And as a further and second defense to the petition of plaintiff, and by way of cross-petition, counterclaim, and set-off thereto, and satisfaction and payment thereof, the defendant says: That heretofore, to wit: shortly prior to the 23d day of July, A. D. 1896, the defendant entered into an agreement with Henry Holgate, the husband of plaintiff, whereby defendant agreed to and did furnish to said Henry Holgate the sum of $2,500 for the purpose of purchasing and dealing in livestock, which money was deposited to the credit of Downer and Holgate in the Bank of Commerce, Sheridan, Wyoming, and at the time of furnishing said funds it was agreed and understood that

the same was only to be used for the purpose of purchasing and dealing in cattle. That thereafter, on the 23d day of July, A. D. 1896, said plaintiff became, and now is, indebted to the defendant in the sum of $150, money of said defendant paid to plaintiff by said Henry Holgate, her husband, from and out of the said fund of $2,500, so furnished by this defendant to the said Henry Holgate, which money was received by the plaintiff for the use and benefit of this defendant, at said time not being indebted to plaintiff in any sum whatever, and the money so received by plaintiff being the money of this defendant. Said sum of $150 has not been paid, nor any part thereof, and there is now due from plaintiff to defendant, said sum of $150; together with interest thereon from the 23d day of July, A. D. 1896, at 8 per cent per annum. The defendant further says that the execution and delivery of the note sued upon in plaintiff's petition arose and grew out of and pertains to the transaction hereinbefore described wherein and whereby said plaintiff became indebted to the defendant as above stated. Wherefore the defendant prays that plaintiff take nothing, and that this defendant have and recover of and from said plaintiff said sum of $150, together with interest thereon at eight per cent per annum, from the 23d day of July, 1896."

To the second defense of this answer, being the counterclaim and set-off, the plaintiff interposed a demurrer on the following grounds: 1. That the court has no jurisdiction of the subject thereof. 2. That the defendant has no legal capacity to recover upon the same. 3. That the counterclaim or set-off is not of the character specified in Section 2459. 4. That it does not state facts sufficient to entitle the defendant to the relief demanded.

The justice overruled the demurrer and plaintiff excepted. Without further pleading on the part of plaintiff, she having elected to stand on her demurrer, the cause was tried, and upon the evidence offered by defendant, judgment was rendered in favor of the plaintiff for $150 and costs.

The defendant took the case, by appeal, to the district court of Sheridan County. In that court plaintiff submitted a motion to strike out the new matter contained in defendant's answer and cross-petition on the ground that the same does not constitute a defense to plaintiff's cause of action. The motion was overruled and plaintiff excepted, and a reply was filed denying generally the allegations of new matter in the answer. A trial de novo was had without a jury, and the court found $120 with interest from the maturity of the note, to be due plaintiff, and rendered judgment accordingly, but ordered that the plaintiff pay all the costs of both courts. It is evident from the finding of the court that thirty dollars were allowed the defendant upon the counter claim and set-off pleaded in his answer.

The plaintiff brings the case here, assigning as error the overruling of plaintiff's motion to strike the new matter from the answer; the admission in evidence of the transaction set up in the answer, the allowance of a set-off to the defendant, and the order requiring plaintiff to pay all the costs, and the overruling of plaintiff's motion for new trial, as well as her motion for a retaxation of costs. The motion to retax costs did not proceed upon any objection to the amount, so far as the motion discloses, but was in effect that they be taxed against the defendant.

The motion to strike out was properly overruled. It is not the office of such a motion to assail an entire cause of action or defense on account of the insufficiency of the facts therein contained. An objection of that character should be raised by demurrer.

On behalf of the plaintiff in error it is contended that the facts do not entitle the defendant in error to any relief in this action under the counterclaim and set-off pleaded by him. In the consideration of this question it will be necessary to review the testimony at some length. The facts concerning the ownership of the money which it is alleged in the answer that the plaintiff had received to

and for the use of the defendant are to be gathered entirely from the testimony of the latter, that being the only evidence relating to that matter.

It seems that since 1892, the defendant and Henry Holgate, the latter being the husband of the plaintiff, had been partners, although the nature of their partnership business prior to the summer of 1896 is not disclosed. In July, 1896, sòme sort of an arrangement was entered into between them for the purchase and sale of cattle. The testimony does not reveal any connection between this deal and any other business in which they may have been jointly interested, and it would appear that the transaction of 1896 was an independent affair. Indeed, from anything shown by the record the partnership between said parties may at all times have consisted of, or been confined to, separate transactions.

The evidence is not as full and satisfactory as we should have desired with regard to some of the details of the arrangement between said parties in July, 1896.

When asked what business relations, if any, he had with Henry Holgate in the summer of 1896, the defendant replied that he believed he was in partnership with him at that time. Explaining the matter, he stated that he furnished Holgate with $2,500 to buy some cattle with — that he had put the money in the First National Bank at Sheridan to fill a cattle contract they had; and that the understanding was that the money was to be expended for cattle. That, instead of buying cattle, Holgate drew a check for $1,500 in his own favor, another check for $25, payable to one Senff, and one for $150, payable to his wife (the plaintiff in error), and skipped the country.

The counterclaim or set-off is based upon the receipt of that $150 by the plaintiff.

It seems the cattle contract was with the firm designated as Kirby & Co.; but the contract is not in the record, nor does it appear to have been introduced in evidence; and its precise nature is in no way disclosed.

Being pressed for further particulars respecting the

$2,500 furnished by him as stated, the defendant testified that $1,500 of the amount was advanced by Kirby & Co. upon the cattle; that it was made by check to Downer & Holgate, handed to defendant and by him deposited in the bank to the credit of Downer & Holgate, and the defendant also deposited to the same credit one thousand dollars of his own money. He further stated that Holgate was to advance some more money but failed to do so. The advance by Kirby & Co. is also referred to in the testimony as a loan, and defendant testified that he supposed that he and Holgate borrowed it together, and entered into a bond — the inference being that the bond was given to Kirby & Co. as security for the advance. It is also stated that the bond was also signed by a party named Senff who was implicated in the deal; and that defendant signed it as surety, and subsequently paid back the money, partly in cash and partly in cattle. We quote the following from defendant's testimony on cross-examination: "Q. Was not this money that was deposited to your credit, was not that furnished by Kirby & Co.? A. $1,500 was furnished by Kirby & Co., and I paid it back. Q. When? A. In about, I think, inside of sixty days after the bond was given. I paid it partly in cattle and partly in money. Q. At the time it was deposited in the bank it was deposited by Kirby to the credit of Downer & Holgate? A. He made the check to Downer & Holgate, and turned it over to me, and I deposited it in the bank. Q. Who borrowed the $1,500 of Kirby? A. Why, Holgate and me, I suppose. We made the deal. Q. You and Holgate borrowed it together? A. And entered into a bond. Q. Who signed the bond? A. I signed the bond. Q. And then you went and paid it by virtue of the bond? A. A fellow by the name of Senff was implicated in the deal. I think he signed the bond, though I am not sure. He signed the contract, I think, and the bond. Q. Were you one of the principals on the bond or surety? A. Surety. Q. You paid the money by virtue of being surety, did you not? A. I was

a partner in the deal, too.  Q. Did n't Senff and Holgate borrow the money themselves and you sign merely as a surety?  A. No, they did not.  They might have made some arrangements with Kirby, but I made the final arrangements with Kirby myself.  I don't know what arrangements they did make.  Q. Now, Senff and Holgate borrowed this money, did they not, and you signed the bond as surety on the 16th day of July, 1896?  A. They made the deal, that is, made the contract; but when it came to the bond and that part of it, I did that myself. I signed the bond to this money that was deposited, was turned over to me.  The check was turned over.  I made the arrangements at the bank and intended to pay for these cattle.  In this contract I was not known.  That was Senff and Holgate, but I was to share in the profits."

In response to questions by the court, he further testified as follows: "Q. Do I understand you and Holgate entered into arrangements whereby he was to buy cattle and you furnish the money?  A. Yes, sir.  Q. You received the $1,500 on the contract?  A. Yes, sir.  I deposited $1,000 of my own money, and he had drafts amounting to $600 or $700, and he said he would take the drafts with him, and that is the reason he did n't deposit them.  Q. He never came back?  A. No, sir.  Q. There was nothing to pay against your $1,000 you left there?  A. No, sir.  I had done business with him a good while.  Q. Did I understand you to say that he was to put your money against that $1,000?  A. Yes, sir.  I think he was to put up $700, and I told him I would put up mine and he could put in his.  Q. You say that he did n't put up any?  A. Yes, sir, and he made a draft on a man in Buffalo for $1,500.  Q. What became of the $1,000?  A. He paid $150 to her (meaning the plaintiff), and $25 was money to Senff, and the balance went back to me."  Counsel then asked the following question: "This check given to Mrs. Holgate was not in that individual sum?" and he replied, "Yes, sir.  He took the $1,500 advanced, and then began to check on the $1,000

I put there, and that is the check signed by Downer & Holgate. It was deposited in the name of Downer & Holgate, but Holgate had not a dollar."

The check received by the plaintiff was signed in the name of Downer & Holgate per "H. H." made payable to themselves, and indorsed in the same way to R. M. Holgate. Mrs. Holgate received it, as appears from her testimony, in a letter from her husband, wherein he directed her to pay with it what he owed George Canfield. She indorsed the check to Canfield, who collected the money thereon, presumably paid himself out of the proceeds, and returned not to exceed thirty dollars to the plaintiff. At that time Henry Holgate was not indebted to the plaintiff.

Before discussing the character of the relations between the defendant and Henry Holgate in this cattle deal, and the former's interest in the money deposited and that received by the plaintiff, it will be well to advert briefly to the testimony regarding the giving of the note upon which suit was brought.

Shortly after the payment by the bank of the check for $150, the defendant demanded that sum from the plaintiff, and she refused to pay it. The defendant testified that the reason she gave for her refusal was that by the payment of the check she might be implicated in the $1,500 matter. The plaintiff, however, denied having acknowledged any liability for the money, and testified that she declined payment because she did not know that she owed the defendant anything. Afterward she loaned the defendant $150, and took his note therefor, payable in ninety days, which was renewed at maturity for a like period, and the suit was brought upon the latter note. The parties differ somewhat in their explanation of the note transaction. The defendant endeavored to make it appear that the money was given him in payment for the check; but in connection with the plaintiff's positive denial of this, the giving of the note would seem to clearly establish that the transaction was a loan pure and simple. It was made

from her own money, and she says that she offered the
defendant a larger amount, as he stated he needed some
funds at that time, but he informed her he could get along
with the $150. The plaintiff's testimony is corroborated
to some extent by another witness who was in an adjoin-
ing room when the note was first given, and heard Mrs.
Holgate say to defendant that she would loan him $150,
and take his note; but did not hear anything said about
the check.

The trial court evidently regarded the transaction be-
tween plaintiff and defendant as a loan, and we think cor-
rectly so. It possesses no characteristics of a payment of
an existing liability.

The first question for our determination is whether the
district court erred in its allowance of thirty dollars to
the defendant upon his plea of counterclaim and set-off.

It is contended on behalf of plaintiff in error that the
claim set up by the defendant is not one upon which he
would be entitled to a judgment against the plaintiff, for
the reason that it is, if anything, a joint demand of Hol-
gate and himself as copartners. It is strenuously urged
that they were partners, and the moneys deposited in the
bank were partnership funds.

It is no doubt the general rule, well established, both
in law and equity, that joint and separate debts can not be
set off against each other. Pomeroy's Remedies and Re-
medial Rights, Secs. 755, 756; Spofford v. Rowan, 124
N. Y., 168; Coleman v. Elmore, 31 Fed., 391; Wagner
v. Stocking, 22 O. St., 297.

In Spofford v. Rowan, supra, the court said, "At law
a joint debt can not be set off against a separate debt, or
conversely, a separate debt against a joint debt, and equity
will only interpose under circumstances in which it is nec-
essary in order to save the claim of a party, and to do this
the facts must be alleged entitling the party to equitable
relief."

And this rule is frequently applied to cases of part-
nership. See 1 Lindley on Part., 291–295; 2 Bates

on Part., Secs. 1076–1084; Coleman v. Elmore, supra.

If the debt claimed to be due from the plaintiff for the money received by her upon the check aforesaid is due to a partnership composed of the defendant and Henry Holgate, it may be assumed that the same could not be used as a set-off in this action upon a note due from the defendant individually.

The vital question, therefore, is whether as to the money received by the plaintiff the defendant and Holgate were partners. In other words, whether they were partners inter se.

There can be no doubt but that the parties expected to form a partnership for the one transaction. Now, a partnership as between the parties themselves never results by implication or operation of law. It must rest upon voluntary contract. As to third persons dealing with a supposed firm, one may, by his acts, render himself liable as partner although not one in fact. Rainsford v. Massengale, 5 Wyo., 1. But inter se there must be a lawful and valid agreement to enter into partnership; and the contract must be executed. An executory contract to form a partnership is not a partnership. Parsons on Part., 6; 1 Bates on Part., Secs. 2, 3, 78. And like all other contracts it must be founded upon a consideration either of mutual promises or contributions. Bates, Sec. 2. Mr. Bates in the section just cited says: "A mere promise by one person that another shall share in the profits of his enterprises, where the other furnishes no capital or labor, or otherwise promotes the common enterprise, is void," and he cites Mitchell v. O'Neale, 4 Nev., 504; Heyhoe v. Burge, 9 B. & C., 431.

In Napoleon v. State, 3 Tex. App., 522, the defendant who was indicted for embezzlement and convicted had been negotiating for the hiring of a car to attend a picnic. One Ransom agreed with defendant for each of them to raise an equal amount of money for the purpose of hiring the car, and providing confectionery, to attend said picnic in a joint adventure. Ransom furnished defendant with

a certain sum, with the understanding that the defendant would contribute a like amount and give his personal attention to the business, the parties to share alike in the profits or loss. Defendant failed to hire the car, and did not provide his share of the money; but he appropriated to his own use the money advanced by Ransom without the latter's consent. The judgment of conviction was sustained on the ground that there had not been a consummation of the partnership. The court said, "In this case the partnership was never consummated; the appellant did nothing in the performance of the conditional agreement. The precedent conditions were that he was to hire a car and furnish half of the capital, etc.; but after defendant got Ransom's money he appropriated it to his own use and abandoned the enterprise. No one of the conditions precedent were performed, by defendant. Then there was no partnership."

In Hobart v. Ballard, 31 Ia., 521, one claiming to be a member of a partnership applied for a dissolution and appointment of a receiver. The plaintiff paid in some of the capital agreed on, but the court found it was contemplated by the parties that the entire sum should be paid within a short time, and that there was to be no sharing of profits until the contract for the payment of the money should have been fully performed. The court held that an existing partnership was not shown. •

In James v. Stratton, 32 Ill., 202, two parties had undertaken to purchase cattle on joint account, each to furnish a portion of the funds for that purpose. One of them failed to furnish his part, and the other, on his own account, obtained the necessary means and paid for all the cattle. Some of the cattle contracted for was on joint account of both parties, and the former was to send a certain sum to pay for his interest in the cattle to be purchased, but failed to do so, and the latter was obliged to borrow the money to make that payment, which he did, and shipped the cattle in his own name. Though the parties had informed the person acting for them in purchas-

ing the cattle that they were partners, a verdict which disregarded that statement and treated the matter as an agreement for a partnership not consummated was upheld.

In Hubbell v. Woolf, 15 Ind., 204, where there had been a proposal for a partnership, and some money advanced toward it, but the agreement had not been signed, the court said, "That the money thus advanced did not constitute the parties advancing it partners, we think clear. They might, undoubtedly, recover it back, the proposed agreement for a partnership not being perfected; but it would not make them partners, even as between themselves and the world, for it would not entitle them to any share of the profits of the proposed business." See also Hoile v. York, 27 Wis., 209.

It may be considered as well settled that if the performance of certain things are conditions precedent to the existence of the partnership, the parties are not partners until these are performed. 1 Bates on Part., Sec. 83; Reboul v. Chalker, 27 Conn., 114; Metcalf v. Redmon, 43 Ill., 264; and see Martin v. Baird, 175 Pa. St., 540.

It is impossible to connect the transaction of July, 1896, between Downer and Holgate, with any former business dealings between them. There is absolutely nothing in the evidence which shows that they were at all related. The contemplated purchase of cattle stands out, so far as appears from the record, entirely independent of any previous business in which they may have been jointly or separately interested. The uncontradicted testimony of the defendant shows clearly that Holgate was to contribute to the joint capital to be employed in the cattle purchase, and he was personally to attend to the buying of the cattle. Instead of doing either, he absconded and abandoned the proposed enterprise. He did not devote his money, nor any part of it, to the prosecution of the business, nor for the joint benefit of the parties. He did not buy the cattle as contemplated, nor any of them.

Suppose, now, that the defendant, on account of Holgate's conduct, had gone on and bought the cattle with

his own means and filled the contract with Kirby & Co., would Holgate have been entitled to share in the profits of the transaction? We think not. It must be remembered that Holgate not only neglected to furnish any money of his own, but that he withdrew from the common fund already provided an amount equal to the sum advanced by Kirby & Co. Hence if Holgate had arranged for such advance, or had been at all instrumental in procuring it, he, almost immediately, withdrew it and appropriated it to his own use. It is not clear, however, that he had even signed the bond. But had he originally contributed that money from his own means, the effect would have been the same. Having taken it from the fund and personally appropriated it as he did, entirely abandoning the contemplated enterprise before anything had been done toward its prosecution, or any steps taken to make the purchase in which the money was to be invested, we would not be inclined to treat it as a contribution by him to the joint capital. It would be a strange doctrine if one who has agreed to enter into a partnership for the prosecution of a certain business, or a single adventure, could, by putting in some money on one day to cover his agreed contribution, immediately, or before the business is commenced, take it back and refuse to have anything further to do with the business which had been contemplated, and refuse to perform any other duty incumbent upon him in the matter, afterward successfully claim that he is a partner and entitled to a share of the profits, if the business or adventure should be carried out by the other party with whom he had agreed to become associated.

The fact that Downer did not himself make the proposed purchase of cattle does not better Holgate's situation. The former was under no obligation to the latter, under the circumstances, to do so. He did repay the advance of Kirby & Co., for which he had become personally liable by the signing of the bond as surety. It does not appear that the Kirby contract was a partnership transaction. Indeed, it was made by Holgate in connec-

tion with another party named Senff, and the defendant was unknown in it. Had it been fulfilled, the latter was to have a share in the profits on account of his agreed contribution in money. The evidence does not disclose whether the arrangement by which defendant was to share in the profits was made before or after the contract with Kirby had been made by Holgate and Senff. The inference may be readily drawn that defendant was not drawn into the business until after the making of the contract. Whatever the fact may be, that contract could have been made by Holgate and Senff, and the bond given and signed by Downer in the absence of any partnership between Downer and Holgate, or any agreement therefor; and had there been an agreement at the time for a future partnership, the making of the Kirby contract does not necessarily indicate a beginning of the partnership.

The fact that the money advanced by Kirby & Co. and that furnished by the defendant was deposited in the bank to the credit of Downer & Holgate is not sufficient in itself to establish the actual commencement or launching of the projected partnership. It is equally as consistent with an agreement or understanding for a future partnership, and the other circumstances must also be taken into consideration to determine the ultimate fact whether or not there was then or when the plaintiff received the check an existing partnership.

We are of the opinion that the evidence may fairly be considered as showing that the partnership had not been consummated. Indeed, it seems to us to clearly establish that fact. However, that having been the conclusion of the learned court below, we are certainly not prepared to say that the finding is so clearly against the evidence as to require a reversal or modification of the judgment on that ground.

It was suggested in a question to defendant on cross-examination that the check sent by Holgate to the plaintiff was not upon the identical money or sum deposited by defendant from his own means. We deem it unnecessary

to distinguish between the money advanced by Kirby & Co. and that furnished by the defendant. Nor do we regard the fact at all material that, having become mingled in one account at the bank, it is impossible to separate the deposits so as to say whether Holgate drew out the identical money contributed by Downer, or that advanced by Kirby & Co. By the deposits the title to the money passed to the bank, and the relation of debtor and creditor was created between the bank and the depositor. The bank was undoubtedly protected, in the absence of notice to the contrary, in paying checks drawn upon the account in the name of Downer & Holgate by the latter. In all reasonable probability not any of the identical money deposited was paid out upon Holgate's checks. A sum equal to that advanced by Kirby having been drawn out by Holgate, his abandonment of the business left Downer solely entitled to receive the money represented by the balance of the account at the bank. If there was no partnership, Holgate had no interest in the funds remaining in the bank; and the claim against the plaintiff for the money received by her out of those funds, would not be one held by the defendant and Holgate jointly.

While we are far from holding that no liability would attach to the plaintiff in the absence of notice, the check received by her was signed in such a manner as to put her upon inquiry. She certainly knew that it did not represent individual funds of her husband.

We are, therefore, of the opinion that there was no error in allowing the thirty dollars to defendant upon his plea of set-off.

Although the judgment was in favor of the plaintiff for $120 and interest, the trial court ordered that she pay the costs of both the justice and district courts. We observe no statutory provision authorizing this. Section 3415, Revised Statutes 1887, which provides that when a judgment is reversed in part and affirmed in part, the court may apportion the costs between the parties in such manner as it deems equitable, applies in the first place only to

the costs accruing on error.   Cartwright v. Sole, 16 O. St., 316; and in the second place it is only applicable to proceedings in error, and does not govern or relate to cases taken by appeal from a justice of the peace to the district court and there tried de novo.

When not otherwise provided by statute, costs are to be allowed, of course, to the plaintiff upon a judgment in his favor, in actions for the recovery of money only or for the recovery of specific real or personal property.   R. S. 1887, Sec. 2695.   If, however, the judgment should be less than one hundred dollars, unless the recovery be reduced below that sum by counterclaim or set-off, each party is required to pay his own costs.   Id., Sec. 2696.

Where the plaintiff recovers one hundred dollars or more, after the allowance of a counterclaim, he is entitled, of course, to recover costs.   Beaton v. Radford, 40 O. St., 106.

It is clear, therefore, that the judgment in favor of the plaintiff should have included costs.   The judgment will be modified as to costs; and the cause will be remanded to the District Court with directions to vacate that part of its order requiring the plaintiff to pay the costs, and to award the plaintiff a judgment for her costs in both courts.

*Judgment modified as to costs.*

CORN, J., and KNIGHT, J., concur.