## GREAT ATLANTIC & PACIFIC TEA CO v HUGHES

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 10, 1935

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff in error.

Thombs & Powers, Youngstown, for defendant in error.

## OPINION

By GUERNSEY, J.

We will consider the assignments of error in the order mentioned.

1. The claim of the plaintiff in this case is that the facts above set forth made a case of negligence per se against the defendant company because they tended to show a violation by the defendant of the provisions of §12760, GC, the pertinent part of which reads as follows:

"Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions, without making the condition

thereof known to the buyer, shall be fined. * * *"

That it is not necessary that the defendant be shown to have knowledge of the condition of the food and that a violation of this section is negligence per se, were questions settled in **Portage Market Co. v George,** 111 Oh St, 775.

It is contended by the defendant that the facts in this case bring it within the rules announced in the case of **Mills Restaurant Company v Clark, 45 Oh Ap, 25, (13 Abs 698)** the syllabi of which are as follows:

"1. A violation of §12760, GC, is not shown by proof that a customer had ptomaine poisoning after eating a salad at a restaurant.

2. An article of food is not necessarily unwholesome within the meaning of §12760, GC, because one consuming it is made ill, it is only unwholesome when it has acquired such qualities as to cause normal persons in a normal condition to be rendered ill by its consumption."

In the opinion in this case the following language is used:

"For the plaintiff to make a case under the statute she was required to prove something more than that she bought and ate the salmon and following that became ill. It is not sufficient if she go even further and show that her illness was due to the salad. She must also show that the salmon was unwholesome in the sense that it was not in its natural state, but had become so tainted that normal persons generally, in a normal condition, would have been adversely effected by its use. The evidence in this case did not meet these requirements nor tend to do so. It failed fundamentally in not showing that the food was unwholesome, as above defined. Let us assume the fact to be proven that the plaintiff had ptomaine poisoning. The contents of her stomach were not analyzed, and no fact, therefore, was developed as to the cause of her disturbance. It was shown, however, that the salmon had been eaten, and it was competent for the jury to infer that the salmon had caused the illness. No further inference could be drawn, however, from this inference. **Sobolovitz v Lubric Oil Co., 107 Oh St, 204, 140 NE, 634.** The further element of the case necessary to recover, to-wit, that when sold the salmon had acquired an unwholesomeness that rendered it unfit for consumption by normal people, was wholly unsupported."

The facts in the case at bar are similar to the facts in the Mills Restaurant case, supra, in that there is no evidence of any analysis being made to determine the cause of plaintiff's sickness, and in that there is no evidence tending to prove that other persons became ill from eating the food which is claimed to have been unwholesome; and dissimilar in that there is evidence in the case at bar tending to prove that persons other than the plaintiff partook of all other foods which the plaintiff ate during the period preceding her attack within which meat poisoning could develop without being made ill and that she alone partook of the food concerning which complaint is made. The latter evidence tends to isolate the sausage purchased from the defendant as the cause of plaintiff's illness.

While we agree with the rule laid down in the second syllabus of the Mills Restaurant case, supra, we are unable to agree with the first subdivision of the syllabus and the reasoning upon which it is based, nor to the application of the rule of law laid down in the Sobolovitz case, supra, to the facts of the Mills Restaurant case, supra, or to the facts in the case at bar.

It is a general rule that all persons are presumed to be normal, so far as the natural functions of the body or organs are concerned, until the contrary is made to appear. Jones Commentaries on Evidence, Second Edition, Vol. 1, page 413.

In the case at bar there was evidence which, although controverted, tended to show that the plaintiff was in normal health at the time she partook of the sausage, and under the rule last mentioned the jury might apart from such evidence presume that the plaintiff was normal so far as the natural functions of her body or organs were concerned. The jury, under the reasoning in the opinion of the Mills Restaurant case, supra, might infer the facts that she ate and became ill within the competent period thereafter that her illness was caused by the meat. Under the evidence and the presumption last mentioned, the jury might further infer that the plaintiff at the time she partook of the meat, was normal so far as the natural functions of the body or organs are concerned; and from the inference of her illness being caused by the meat and the inference of normality, neither being based on nor corelative of the other, might further infer that the meat was unwholesome in the sense that it was not in its natural state but had become so tained that normal persons generally, in a normal condition would have been adversely affected

by its use, as if it had been in a natural state she as a normal person would not have been adversely affected by its use.

The rule announced in the Sobolovitz case, supra, that an inference of fact cannot be predicated upon another inference, but must be predicated upon facts supported by evidence, applies only to instances where the inferences are entirely cumulative.

When analysis shows that, though there are several inferences in a particular case, such inferences rest in part upon independent evidence and are not entirely cumulative, it is plain that the party is entitled to the benefit of all. Jones Commentaries on Evidence, Second Edition, Vol. 1, page 635. It would therefore appear that there is evidence and evidentiary presumptions and inferences in the case at bar tending to support every essential element of the claim of the plaintiff against the defendant.

The next question then to consider is whether the verdict and judgment are against the weight of the evidence. In weighing the evidence in this case it is necessary to take into consideration the falure of the defendant to call as a witness in its behalf Mr. Bickel, a representative in its legal department, who secured a specimen of the sausage complained of from the plaintiff for the purpose of analysis, and who was present in a room adjacent to the court room at the time of trial.

It has become a well established rule that where evidence which would properly be part of the case, is within the control of the party for whose interest it would be natural to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. 10 R.C.L., page 884.

The evidence in the case at bar shows that Bickel, a legal representative of the defendant, secured a specimen of the sausage complained of. It also appears that he delivered a specimen of the sausage for examination, to the city laboratory, and that the specimen delivered to the city laboratory was afterward taken from the laboratory by a doctor employed by the defendant and thrown away. Under these facts it was incumbent upon the defendant to call Bickel as a witness to account for the specimen delivered to him by the plaintiff and to show that the whole of the specimen was delivered to the city laboratory for analysis and that if such were the case that no part of the specimen had been delivered to anyone else for analysis nor

analyzed by anyone else, and in the absence of such testimony the jury might draw an inference that a part of the specimen was delivered to a person or persons other than the city laboratory for analysis and that the analysis was unfavorable to the contentions of the defendant. While this inference is not substantive proof and cannot supersede the necessity of other evidence on behalf of the party for whose benefit the inference is to be made, it, taken in connection with the other evidence in the case, is sufficient to support the verdict and judgment.

2. The second assignment of error is that the court erred in giving certain written instructions on behalf of the plaintiff before argument.

The first instruction to which exception is taken, is plaintiff's request to charge, number six. This instruction is on the measure of damages and in the instruction it is stated that the compensation to be given should include pain, suffering and inconvenience which the plaintiff has already suffered, as well as the pain and suffering that she would, **with reasonable probability,** suffer in the future, and to also include in the measure of damages any operation she might, **with reasonable probability,** have to undergo.

It is contended by the defendant that the instruction as given violates the rule set forth in the second subdivision of the syllabus in the case of **Pennsylvania Railroad Company v Files, 65 Oh St, 403,** which is as follows:

"Where prospective damages from an injury are claimed, they should be limited by the court in its charge to such as may be reasonably certain to result from an injury."

It is also contended by the defendant that the instruction given is in conflict with the fifth subdivision of the syllabus in the case of **Toledo Railways & Light Company v Prus, 7 Oh Ap, 412,** that:

"Where prospective damages from an injury are claimed, they should be limited by the court in its charge to the jury to such as the evidence shows are reasonably certain to result from the injury, and it is error to charge that recovery may be had for 'such future pain and suffering as you find from the evidence is liable to ensue'."

In Sedgwick on Damages, Eighth Edition, Vol. 1, page 249, the author, speaking of prospective losses, after stating the rule

to be that such losses must be reasonably certain to ensue, uses this language:

"This 'reasonably certain' does not mean absolute certainty, but reasonable probability."

In Hamilton v Great Falls S. & R. Co., 17 Montana, 334, 42 Pac., 860; 43 Pac., 713, the court said:

"The court charged, among other things, that damages could be awarded for 'such consequences as are reasonably likely to ensue in the future'; and again, 'plaintiff may recover for all pain and suffering which she has sustained, or in reasonable probability will hereafter sustain', and so forth. The appellant now contends that damages can only be awarded when it is rendered reasonably certain from the evidence that damages will inevitably and necessarily result from the original injury. In this case all testimony as to future disability consisted of expert medical opinions. Certainty of future effects was impossible, and reasonable probabilities were necessarily the basis of the opinions expressed. Therefore to say that she could recover for suffering which she would in reasonable probability sustain was practically to say that she might recover for suffering which she was reasonably certain to sustain. The degree of proof would be the same in either case."

The last mentioned case is cited with approval in the case of Gallamore v City of Elympia, Supreme Court of Washington, 75 Pac. 978, where a similar holding is made.

It therefore appears that under the rule announced in Sedgwick on Damages, above referred to, and under the cases mentioned, that the term "reasonable certainty" does not mean absolute certainty, but reasonable probability, and that the use of the phrase "reasonable probability" in the charge complained of, was the equivalent of "reasonable certainty" and therefore not erroneous. The word "liable" as used in the charge in the Toledo Railways and Light Company case, supra, is not the equivalent of "probable" but is the equivalent of the word "possible" and the decision in that case is therefore not applicable to the facts in the case at bar.

The verdict in the case at bar was for the sum of one thousand dollars, which upon the evidence of illness, rupture and hemorrhoids sustained by the plaintiff would be no more than sufficient to compensate her for such injuries without ref-erence to future consequences or future pain and suffering. So that even if the charge as given was not technically correct, it was not prejudicial to the defendant.

The second instruction complained of under this heading is plaintiff's request No. 4, on preponderance of evidence. That particular part of the instruction complained of is a sentence in the instruction as follows:

"The preponderance of the evidence is not to be measured by the number of witnesses."

After this sentence the following appears:

"The preponderance of the evidence or proof is to be determined by you in this case from a consideration of all the testimony and all witnesses. Where you find the truth to be, there will you also find the preponderance of the evidence to be."

The latter part of the request is absolutely correct, and read in connection with the part complained of, is a correct statement of the law applicable to the facts and this instruction therefore was not erroneous.

The next complaint is as to plaintiff's request No. 7 charged before argument, which is as follows:

"In determining whether or not Mrs. Hughes was made ill and was injured by diseased, infected or tainted meat sold to her by the defendant you may reason according to the probabilities in the case, drawing inference that these main facts existed or occurred, from collateral or other facts presented in the evidence in this case which may not directly prove, but which may strongly tend to prove the existence or occurrence of the main fact."

It is contended by the defendant that the whole effect of this charge is to inform the jury that an inference of fact may be predicated upon another inference, which is contrary to the law of Ohio. The charge as given is a correct statement of law as far as it goes. If the defendant desired a more complete statement as to the nature of the proof of facts from which inferences might be drawn, it would have been entitled to have an instruction to that effect given by the court, but in the absence of a request for further instructions and refusal of the court to grant such request,

the defendant is not entitled to claim error in the charge as given.

3. The third assignment of error relates to the refusal of the trial court to charge before argument defendant's request number 12, which is as follows:

"The court says to you that you have no right to infer any fact by reason of the fact that Mr. Bickel, an employe of the A. & P. Company, was not called as a witness."

We have already discussed the inference that the jury might draw from the fact that Mr. Bickel was not called as a witness. As the jury under the facts of the case might draw an inference from the failure of Bickel to testify, the refusal of this request was not erroneous.

4. In our discussion of the first assignment of error we reach the conclusion that there was substantial evidence to sustain each of the essential elements of the claim of the plaintiff against the defendant, and this conclusion disposes of the fourth ground of error assigned by the defendant, of error in refusing to direct a verdict, and under this conclusion the rulings of the court on the motions to direct a verdict were correct.

As for the reasons mentioned we find no error prejudicial to defendant specified in the brief, the judgment of the Court of Common Pleas will be affirmed. But, as we find that the decision in this case is in conflict with the decision of the Court of Appeals of Cuyahoga County, in the case of **Mills Restaurant Company v Clark**, 45 Oh Ap, 25, this case will be certified to the Supreme Court as being in conflict with said case.

KLINGER, J, concurs.