No. 13,638.

VENETUCCI *v.* CITY OF COLORADO SPRINGS.
(63 P. [2d] 462)

Decided November 30, 1936.

390

Messrs. STRACHAN & HORN, for plaintiff in error.

Mr. BEN S. WENDELKEN, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

NICHOLAS Venetucci sued the city of Colorado Springs for damages. He claims that a dike constructed by defendant diverted onto his property surface or flood water that, but for such dike, would have gone elsewhere. The verdict and judgment went against him, and he is here seeking a reversal of the judgment.

Plaintiff's counsel argue only two assignments of error; namely, ''(1) That the verdict and judgment is contrary to all of the evidence and is not supported by the evidence; and (2) that the court erred in giving to the jury its instruction No. 3.''

1. About two miles northeast of Colorado Springs is a platted area known as Papetown (marked ''Papeton'' on a map in evidence). In the extreme southeast corner thereof plaintiff owns four lots on which there are two dwelling houses. The plaintiff also owns 65 acres of land lying immediately east of Papetown. About the center of the tract were an orchard and a garden of some four or five acres.

In 1932 there was a flood. The water passed through the orchard and the garden and through plaintiff's Papetown lots, destroying the orchard and removing from their foundations plaintiff's two houses. The land in the

southeast part of Papetown is several feet higher than that in the center and northern parts of Papetown.

The plaintiff contends that the damage to his property was due to a dike constructed by the city; whereas the city contends that it was caused, not by the dike, but by the unprecedented volume of water that covered land that had not been affected by previous floods, and that caused damage everywhere in the vicinity of plaintiff's property greatly in excess of that caused by previous floods.

Northeast of Colorado Springs is Templeton Gap, a narrow valley, running in a northeasterly and southwesterly direction. The mouth of the Gap through which the water is discharged is situated at the northeast corner of the plaintiff's sixty-five-acre tract of land, and about one-half mile east of Papetown, and some two miles northeast of the city. Normally, Templeton Gap is dry, but in times of heavy rain it carries large quantities of water, which at times "becomes a raging torrent." There is evidence tending to establish the following additional facts: Originally and normally, the water discharged from Templeton Gap flowed or was hurled to the west across the plaintiff's land and across Papetown. However, the natural course of the water was interfered with by certain artificial obstructions placed in Templeton Gap. The obstructions consisted of a mine dump in the north half of the channel, a mine road built across the channel, and an embankment thrown up to keep the water pumped from the mine from seeping back into the mine workings. The obstructions turned the water to the south, gradually cutting a channel in that direction and causing an ever-increasing quantity of water to flow to the south into Shooks Run, a natural channel passing through the city. In 1922, during a severe flood, 25 per cent of the water was thus diverted to the south and 75 per cent flowed to the west. In 1927, to maintain that division of water, the city built a dike at the mouth of Templeton Gap on land owned by the city. The dike

commenced a few feet northwest of the southeast bank of the Gap and ran in a direction a little south of west to and across the northwest bank, and ended at the north line of plaintiff's land, thereby dividing the water so that 25 per cent thereof would continue to flow south and 75 per cent west, as it did during the flood of 1922.

There is some evidence tending to support the plaintiff's contention that before the erection of the dike, though a small portion of plaintiff's sixty-five-acre tract would receive some water, it was not sufficient to damage the land, and that flood water went north of Papetown and through the northern part and the center of Papetown, but not across plaintiff's lots.

But there were witnesses who testified as follows: Between 1900 and 1903 there were two floods, and while the water did not run through plaintiff's houses in Papetown, it was close to them. Between 1900 and 1910 most of the flood water was centered in the street at the north end of the block in which plaintiff lived, but some of it went to the south of that street. Water always went through plaintiff's pasture—not through the houses, but past them—southeast. Flood water from Templeton Gap went across Papetown. Papetown often was flooded between 1898 and 1916. During the 1922 flood there was water "all over Papetown"; witness could not get into "town" until the water subsided, and houses (witness did not say plaintiff's) had been moved off their foundations. The city engineer testified that water from Templeton Gap could not go to Papetown without flowing across plaintiff's land, as there was no other possible way to get to Papetown; and the former county surveyor and another witness testified to the same effect. A real estate agent sold the sixty-five-acre tract to plaintiff in March, 1922, and received a deposit. Before the deal was completed the flood of 1922 occurred and damaged the plaintiff's land so severely that plaintiff told the agent that he would rather lose his deposit than go ahead with the deal. The 1922 flood washed away the surface

of the "center half" of plaintiff's land. Plaintiff's son testified that in the 1932 flood the damage was done during the first fifteen minutes, after which the dike broke and the water immediately went down around the house on which he had sought refuge. But another witness testified that the water "just flooded all over the country there," both before and after the dike broke. Paul V. Hodges, hydraulic engineer for the United States Land Irrigation Service, testified that in his opinion, if the dike had not been there, the water would have gone substantially where it did go; and plaintiff's son testified that before the dike broke he saw the water striking the dike and splashing from 15 to 20 feet into the air.

In their brief counsel for plaintiff say that, "The only real issue in the case was whether or not the acts of the defendant in building and maintaining the dike so diverted the flood waters from their natural course or channel as to cause the damage to the plaintiff." That was the issue submitted to the jury, and they decided it against the plaintiff.

██ ██ At the close of the evidence the jury, at the request of counsel for both parties, were permitted to, and did, examine "the area involved in" the action. That, of course, enabled the jury to understand the situation and some parts of the evidence far better than we can. The jury saw the witnesses and observed their appearance and demeanor upon the witness stand. They were the judges of the credibility of the several witnesses and of the weight to be given to their testimony. It was for them to draw inferences fairly deducible from the facts and circumstances in evidence. On review, the record is viewed in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment. *Roberts v. Dietz*, 88 Colo. 594, 298 Pac. 1062.

Applying those principles to the present case, we cannot uphold plaintiff's contention that the verdict and

judgment are not supported by the evidence. Assignment No. 1 is overruled.

2. The only other assignment is that the court erred in giving instruction No. 3, which reads: ''The court instructs the jury that if waters are turned out of their natural course by artificial means or obstructions over the lands of another, the latter has the right to erect such barriers or construction as will return the waters to their natural course, so that they will flow in such course in the same manner and quantity as would have been the case except for such artificial obstructions as first erected, and that no cause of action or right of recovery exists for the erection or construction of such barriers or obstructions, the only effect of which is to return waters to their natural course in the same quantity and manner as they would have flowed except for having been diverted therefrom by some artificial obstruction.''

The objection to this instruction urged by plaintiff's counsel is, not that it incorrectly states the law, but that it is not applicable to the facts in evidence. It is said that there is no evidence that the dike turned the waters back to the same course, so that they flowed in such course in the same manner and quantity as would have been the case except for the artificial obstructions as first erected.

We think that the evidence detailed above, together with the maps in evidence, justify the giving of the instruction, and we already have held that the evidence supported the verdict and the judgment. This assignment is overruled.

The judgment is affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE HOLLAND concur.