No. 19,890.

LEO S. COTTINGHAM *v.* STAR BUS LINE.

(381 P. [2d] 25)

Decided April 29, 1963.

Mr. Francis R. Salazar, Mr. Herbert W. DeLaney, Jr., Mr. Bailey Belfor, for plaintiff in error.

Messrs. Wood, Ris & Hames, for defendant in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

In his complaint Cottingham alleged that on August 20, 1958, a vehicle owned and operated by the Star Bus Line (hereinafter referred to as the defendant) collided with a vehicle operated by Cottingham, that the collision and his resultant injuries were proximately caused by the negligence of defendant's employee, and he prayed for damages in the amount of $210,000. Inasmuch as the *only* issue presented by this writ of error is Cottingham's contention that the award of the jury is legally inadequate, it is deemed propitious at this juncture to examine his alleged damage with particularity.

Cottingham alleged that in this collision he received "serious and permanent injuries to his person, including injuries to the lumbar and cervical spine, injury to his entire nervous system, leg pain, back pain, headaches and great mental pain and suffering," all to his damage in the amount of $100,000.

Further, Cottingham alleged that as a result of this accident he had already "lost time from his usual employment," would in the future "lose further time," and that his earning capacity would be permanently diminished, for which he sought an additional $100,000.

Finally, he claimed $10,000 for past and future medical and hospital expense.

By amended answer the defendant admitted that the collision was solely caused by the negligence of its employee, and hence the only issue tried and submitted

to the jury was the nature and extent of Cottingham's injuries and damages, if any, which were proximately caused by the admitted negligence of said employee.

After a four-day trial, the jury returned a verdict fixing Cottingham's damage at $500. Being dissatisfied therewith, Cottingham sought a new trial on the one issue of the amount of his damage. The motion for new trial was denied, and by the present writ of error Cottingham seeks reversal of the judgment entered in his favor for $500.

■ The legal principles which govern the disposition of this matter are not in dispute. Rather the controversy comes into being in evaluating the evidence in the light of certain well-settled rules. It is agreed, for example, that "on review, the record is viewed in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment." See *Venetucci v. City of Colorado Springs,* 99 Colo. 389, 63 P. (2d) 462.

■ Similarly, it is agreed that this judgment should not and can not be reversed "unless, under the evidence, it can be definitely said that the verdict is grossly and manifestly inadequate, or unless the amount thereof is so small as to clearly indicate that the jury neglected to take into consideration the evidence . . . [as to damages] . . . or was influenced by prejudice, passion or other improper considerations." See *Lehrer v. Lorenzen,* 124 Colo. 17, 233 P. (2d) 382. In the Lehrer case this Court went on to state: "There is nothing in the record here appearing to indicate that the jury was improperly influenced in any manner whatever in arriving at its verdict. It was composed of men and women who were as capable of determining plaintiffs' pecuniary loss as was the trial judge. The amount of such loss was a question of fact peculiarly within the province of the jury, and if the trial judge was permitted to set aside the verdict simply because he would have fixed a dif-

ferent amount, then in cases of this nature, juries would be entirely unnecessary."

The foregoing rule is deemed to be equally applicable to this Court when called to pass upon the alleged legal inadequacy of an award fixed by a jury. In the instant case there is certainly nothing in the record to indicate that the jury was influenced by "prejudice, passion or other improper considerations." Also, it is deemed noteworthy that no complaint whatsoever is made to any of the several instructions given the jury. Also, on occasion it has been observed by us that a jury verdict in a damage case is sometimes a compromise among the several jurors on the separate issues of liability and the extent of damage, and where the award in such situation flies in the face of all the evidence, a new trial has been ordered. See *The McCarthy-Johnson Heating & Engineering Co. v. Frankel,* 70 Colo. 330, 201 Pac. 36. But in the instant case liability was admitted, and hence there was no opportunity for this type of compromise. Our problem, therefore, narrows to a determination of whether the award of $500 is "grossly and manifestly inadequate," or is "so small as to clearly indicate that the jury neglected to take into consideration the evidence" of damage allegedly suffered by Cottingham, such evidence to be "viewed in the light most favorable to" the defendant.

It is defendant's theory of the case that the accident occurring on August 20, 1958, was a very minor one in which Cottingham suffered only slight injuries; that prior to the accident Cottingham had emotional problems caused by mental stress and strain; that subsequent to this accident and before trial Cottingham suffered injuries in three more accidents, two of which were automobile collisions, and that this posed a question of fact to be resolved by the jury as to whether any mental or physical disability existing as of the date of trial was caused by the collision of August 20, 1958, or by any one or more of the several intervening acci-

dents; and that under all these circumstances the award of the jury is supported by the evidence and the inferences fairly deducible therefrom, and accordingly the judgment should not be disturbed. Is there evidence to support such a theory of the case? We hold that there is, as a review of the evidence will demonstrate.

Cottingham was a traveling salesman for a pet food concern and in performing his work traveled some 50,000 miles per year, largely by automobile. As of August 20, 1958, he was paid on a commission basis, and his income in 1958 was $8,217, $8,052 in 1959 and $7,392 in 1960. He was described as an outstanding salesman and one who tended to be a "perfectionist," and because of his general excellence of performance had won national sales contests both before and after the accident of August 20, 1958.

All of the evidence tended to show that prior to August 20, 1958, Cottingham had a "preexisting vulnerable personality, subject to stress reactions which had existed all of his life." On the whole his had not been a happy childhood, the unhappiness being occasioned by misconduct of his father, all of which culminated in a broken family. Cottingham served briefly in the U. S. Navy, from which he was given a medical discharge. Similarly, after attending college for a few months he dropped out of school because of a medical problem partaking of both physical and emotional disorders. Although the details are lacking, it was established that some time prior to August 20, 1958, Cottingham was involved in an accident in Texas, at which time he injured his leg and back and for which he received money compensation as damages. Finally, it was established that in the several months immediately preceding August 20, 1958, Cottingham had complained to his family doctor that he suffered from "fatigue . . . slow to start in the morning, decreasing ambition, appetite down, occasional light-headed spells, passed out one time."

The accident here complained of occurred in Cheyenne, Wyoming, on August 20, 1958, when Cottingham, who had stopped his vehicle for a red signal light, was struck in the rear by a bus owned by the defendant company and driven by one of its employees. The impact was apparently not great, the Cottingham vehicle being pushed forward into the intersection. Cottingham stated that as a result of this impact he was momentarily stunned, but specifically testified that he was not thrown out of the seat, or onto the floor, or against the steering wheel, "or anything like that." He exchanged information with defendant's driver, and then returned to his motel. His only medical treatment on the night of the accident was to take some aspirin.

The following morning Cottingham drove to Denver from Cheyenne, and immediately consulted his family physician. This examination was negative in character and shortly thereafter Cottingham left on a 5,000-mile business trip. On September 20, 1958, while driving in New Mexico, Cottingham began to experience "fatigue, numbness and dizziness," and he consulted a doctor in Albuquerque. This doctor gave him some tranquilizing pills and prescribed a cervical collar. On his return to Denver, Cottingham again consulted his family doctor who placed him in traction for three days, at the conclusion of which he returned to his work. This three-day period was the only time Cottingham was absent from his job between August 20, 1958, and May 11, 1959, when he was again involved in an automobile accident.

On May 11, 1959, in Albuquerque, New Mexico, an automobile cut in front of Cottingham's moving vehicle causing Cottingham to bring his car to such an abrupt and sudden stop that a 25-pound bag of dog food flew from the rear of his vehicle and struck him on the back of the head and shoulders. A local Albuquerque physician gave him an injection of local anesthesia in the back and on his return to Denver he consulted with an

orthopedic surgeon who referred him to a psychiatrist. The psychiatrist recommended that Cottingham "let up on his work" and take a leave of absence, which advice he declined to follow. Rather, as soon as he recovered, he left on an out-of-state sales trip in an effort to win a pending sales contest.

In connection with the Albuquerque accident Cottingham filed a report with the Industrial Commission stating that as a result of this particular accident he injured his back and neck, and that he was off work from May 11, 1959, to June 8, 1959.

On April 17, 1960, Cottingham severely injured his hand and fingers in a rotary power mower, was off work for some time as a result thereof, and suffered considerable shock, all of which did not contribute to his emotional stability or mental tranquility.

Finally, on July 14, 1960, he was involved in another automobile accident in Denver, and as a result of this accident he was off work from July 14th to 18th, when he attended a company meeting, and thereafter remained off work until August 16, 1960. At this juncture his employer took the company car from him and gave him an inside position as clerk in its local Denver office. As an outgrowth of this accident Cottingham again filed a report with the Industrial Commission stating that he sustained injury to his back and neck and made a separate claim for damages against the driver of the other vehicle in which he was demanding a $5,000 settlement.

Cottingham worked as a clerk until September 7, 1960, when he suffered what he described as a "serious seizure"; whereupon he was hospitalized and for practical purposes "quit his work."

In our view the foregoing synopsis demonstrates that there is evidence which, when coupled with the inferences fairly deducible therefrom, amply supports the defendant's theory of the case and precludes us from upsetting the jury's verdict.

True there was evidence to the contrary, Cottingham initially testifying, in effect, that prior to August 20, 1958, he was a near perfect physical specimen, beset by no mental or emotional disorders. Needless to say he minimized the effect of all his accidents save and except the one of August 20, 1958, which he felt caused all of his mental and physical disability as it existed as of the date of trial.

In support of his theory of the case Cottingham called an orthopedic surgeon who testified that in his opinion Cottingham as of the date of trial was permanently disabled as a working unit in the percentile amount of $2\frac{1}{2}\%$, and that $80\%$ of this disability was attributable to the accident of August 20, 1958, although in the defendant's view this doctor on cross-examination admitted that his opinion was based, in part, on hearsay. Cottingham also called a psychiatrist who in the main tended to buttress his several contentions.

Cottingham stresses that the defendant did not call any orthopedic expert, hence, he says, the testimony of his orthopedic expert is uncontroverted. The defendant, however, did call two psychiatrists, one of whom generally minimized the effects of the accident of August 20, 1958, and specifically stated that the accident of July 14, 1960, was the most "disruptive" of all the accidents suffered by Cottingham because of the fact that his company-owned car was taken from him immediately thereafter.

In *McWilliams v. Garstin,* 70 Colo. 59, 197 Pac. 246 it was said that "the weight to be given to opinion evidence is for the jury . . . the judgment of experts, even when unanimous and uncontroverted, is not necessarily conclusive on the jury." In the instant case there is not unanimity among all the experts, rather in the over-all there is sharp dispute as to the nature and extent of the injuries suffered by Cottingham in the accident of August 20, 1958, no objection was made to any instruction given the jury, and under all the cir-

cumstances the verdict of the jury should not be disturbed.

The judgment is affirmed.

MR. JUSTICE SUTTON not participating.