**Pete William ZERR and Mildred I. Zerr, Plaintiffs-Appellants,**

v.

**Joanne TRENKLE, the duly appointed, acting and qualified Administratrix of the Estate of Paul D. Trenkle, deceased, Defendant-Appellee.**

No. 71–1085.

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1972.

Paul Snyder, Jr., Boulder, Colo. (Taussig, McCarthy & Snyder, Boulder, Colo., on the brief), for plaintiffs-appellants.

Duane O. Littell, Denver, Colo., for defendant-appellee.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

A head-on collision occurred on July 8, 1967, near Sterling, Colorado, between a tractor-trailer being driven in a westerly direction by Pete William Zerr and a one-half ton pickup truck being driven in an easterly direction by Paul D. Trenkle. Trenkle was killed in the collision. As a result of this accident Zerr, and his wife Mildred, brought an action against Joanne Trenkle, as the administratrix of the estate of Paul D. Trenkle, with Zerr seeking damages for personal injuries allegedly sustained by him in the collision and with his wife seeking damages for loss of consortium.

Liability was admitted and the ensuing trial by jury concerned the issue of damages only. It was Zerr's claim that as a result of the collision he sustained three more or less separate injuries: (1) neck and back injuries superimposed on a prior neck and back injury; (2) a traumatic neurosis; and (3) a heart attack suffered some fifteen months after the accident here in question. The jury returned verdicts fixing Zerr's damages at $9,000 and his wife's damages at $1,000. Both Zerr and his wife now appeal from the judgments duly entered on the aforesaid verdicts, though the issues raised on appeal relate only to Zerr's claim.

Counsel frames the issues as follows: (1) The failure of the trial court to fully instruct the jury on proximate cause; (2) the gross inadequacy of the damages awarded Zerr by the jury; and (3), the ruling by the trial court that counsel in questioning his medical experts as to the causal connection between the accident and the heart attack must do so on the basis of a "reasonable medical certainty," as opposed to a "reasonable medical probability." We find no error and affirm.

I.

The argument that the jury was not fully instructed on proximate cause pertains only to Zerr's claim that his heart attack, which occurred some fifteen months after the accident, was proximately caused by the collision. In this regard the evidence on causal connection was in conflict. Some, but not all, of Zerr's evidence showed that there was a connection and that even though Zerr may well have had an internal predisposition to a heart attack, still but for the accident the heart attack would not have occurred. Defense witnesses testified there was no causal connection whatsoever between the heart attack and the collision.

On this state of the record the trial court gave the jury the usual instruction concerning proximate cause to the effect that proximate cause "means that cause which in natural and probable sequence produced the claimed injury. It is *the* cause without which the claimed injury would not have occurred." (Emphasis added.)

Counsel predicates error on the fact that in the instruction set out above the trial court used the article "the" instead of "a." Counsel claims that as a practical matter the instruction thus given precluded the jury from even considering the claim that the heart attack was caused by the collision and in effect "amounted to a directed verdict against Zerr on the heart attack issue." Not so. Actually, if the jury believed Zerr's experts, under the aforesaid instruction the jury could have indeed found for Zerr on the heart attack issue. As indicated, Zerr's medical testimony was to the effect that even though Zerr had a predisposition to a heart attack, the heart attack would not have occurred without the collision, which would mean, under the language of the instruction,

that the collision was in fact "the" cause without which the heart attack would not have occurred. *See* Moore v. Standard Paint & Glass Co. of Pueblo, 145 Colo. 151, 358 P.2d 33 (1960), where it was held that where several concurring acts or conditions of things, one of which is the negligence of the defendant, combine to produce an injury, but the injury nevertheless would not have occurred but for the defendant's negligence, then the defendant's negligence is *the* proximate cause of the injury.

We do not deem Redman & Scripp, Inc. v. Douglas, 170 Colo. 208, 460 P.2d 231 (1969), to be of much assistance to Zerr. That was a case involving concurring causes of an accident under circumstances where the negligence of the one driver could not be imputed to the owner of the vehicle who brought suit against the second driver. It was in this setting that it was held that a finding by the trial court that the defendant's conduct, if negligent, was not *the* proximate cause of the injuries sustained by the plaintiff was insufficient because liability would attach if defendant's conduct was only *a* proximate cause of the collision. Accordingly, that case is readily distinguishable on the facts from the instant case, where the defendant admitted complete responsibility for the collision in question and the only issue is what injuries were proximately caused by the accident. We find no error in this regard.

## II.

Zerr initially sought damages in the sum of $250,000, which prayer was reduced before trial to $100,000, which was apparently the amount of insurance carried by the deceased. As indicated, the jury assessed Zerr's damages at $9,000 and it is here asserted that such is grossly inadequate under the evidence.

In making this argument, counsel assumed that the jury found that the heart attack was not caused by the accident, but claims that as concerns the back and neck injury and the traumatic neurosis, the special damages alone totaled $11,266.80. Breaking down this figure, $433.80 represented medical bills and the remaining $10,833 represented wages lost when Zerr was off work for some eight months.

To round out the picture, it was the defendant's theory of the case that Zerr's injuries in the accident were minimal, i.e., a cut on the nose and the head. Upon trial it developed that Zerr had been involved in accidents in 1960 and 1962 wherein he sustained neck and back injuries which necessitated an operation in 1965, and that he had never fully recovered from those two accidents.

As concerns the accident here in question, Zerr was taken from the scene of the collision to a Sterling hospital where the cuts on his face were treated, no stitches being necessary. He then came on to Denver, his original destination. Counsel argued that though Zerr may well have been suffering from a variety of ailments, the bulk of them stemmed from other causes and were not the result of the accident in question, and in particular that Zerr's laying off work for some eight months was not the result of the collision.

Under these circumstances, we as a reviewing court are disinclined to set aside the jury's verdict assessing Zerr's damages at $9,000. The law on this matter is well settled: The evidence relating to damages should be viewed in a light most favorable to the verdict and the verdict should not be overturned unless it can definitely be said that it is grossly and manifestly inadequate, or unless the amount thereof is so small as to indicate that the jury neglected to take into consideration the evidence as to damages or was influenced by prejudice, passion or other improper considerations. Cottingham v. Star Bus Line, 152 Colo. 188, 381 P.2d 25 (1963). Applying this test, we as a reviewing court are not at liberty to set aside the jury's verdict of $9,000.

### III.

Counsel claims that the trial court erred in requiring him to phrase the hypothetical questions he put to his medical experts on the basis of a "reasonable medical certainty," as opposed to a "reasonable medical probability." Actually, the record does not reveal such to be the case, although the trial court in its questioning of one doctor did use the phrase "reasonable medical certainty." In any event, we perceive no error.

Many courts have held that for all practicable purposes the two phrases are synonymous. In Great Atlantic & Pacific Tea Co. v. Hughes, 53 Ohio App. 255, 4 N.E.2d 700 (1935), the term "reasonable certainty" was held not to mean "absolute certainty" but "reasonable probability," and the use in an instruction of the phrase "reasonable probability," instead of "reasonable certainty," was not error. See also Rogers v. Sullivan, 410 S.W.2d 624 (Ky.Ct.App.1966), and Wilkinson v. Dunbar, 149 N.C. 20, 62 S.E. 748 (1908).

In Barter Machinery and Supply Company v. Muchow, 169 Colo. 100, 453 P.2d 804 (1969), in connection with the giving of an instruction concerning permanent injury, the Colorado Supreme Court, after citing cases, approved the following language:

> "In an action for personal injuries, the court should not give an instruction allowing the jury to assess damages for permanent injuries or lasting impairment of health unless there is evidence showing, *with reasonable certainty*, that such permanent injuries or lasting impairment of health have been in fact sustained by the plaintiff. * * *" (Emphasis added.)

 We recognize that the Colorado Supreme Court in Houser v. Eckhardt, 168 Colo. 226, 450 P.2d 664 (1969), also used the phrase "reasonable medical probability" in holding that a medical expert, otherwise qualified, is not rendered incompetent because his physical examination was not for the purpose of treatment, but for the purpose of testifying in court. Such would seem to indicate that the Colorado Supreme Court also regards the two phrases here under consideration as being synonymous. In any event we find no error in the fact that the trial court preferred the use of the phrase "with reasonable medical certainty."

Judgments affirmed.