### Swift and Company v. John Raleigh.

1. PLEADINGS—*The Object Defined.*—The object of pleading is to apprise the opposite party of the charge against him, or of the defense to be interposed, so that due preparation for trial may be made, and not to furnish a sword for defeating a good case on technical and fanciful distinctions, which in no manner interfere with the proper decision of the case on its merits.

2. VARIANCE—*In Actions for Negligence.*—In actions for personal

injuries it is the duty of the court to confine the jury to the negligence alleged as the ground of recovery, and not to leave them unbridled, to render a verdict upon some other ground, simply because the work is hazardous in general.

3. RULES OF COURT—*Must be Incorporated in the Bill of Exceptions.* —Where an instruction is refused because it was not presented to the court before the commencement of the closing argument, as required by the rules, and it is designed to assign such refusal for error, the rule and the refusal must be made to appear by a bill of exceptions. A mere statement on the margin of the instruction, "refused, because not offered," is not sufficient.

4. CERTAINTY—*Reasonably Certain—Probable.*—It is error to refuse an instruction that damages can not be allowed for permanent injuries, unless it is reasonably certain that permanent injuries have been received. To say "reasonably certain" is practically the same as to say " probable."

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

POLLARD & WERNER, attorneys for appellant.

JESSE M. FREELS and WM. WINKELMAN, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

On February 6, 1893, appellant was engaged in remodeling a packing-house in East St. Louis. Large girders, about sixteen feet apart, ran from north to south across a room which was ninety-six feet wide by one-hundred and twenty-eight feet long. Beneath, and at right angles to the girders, were joists, or hog-runs, which were sixteen feet in length and two and three-quarters inches in thickness, and weighed about two hundred pounds each. Iron bolts were fastened to the girders and passed through the ends of the joists, which were thus suspended beneath the girders and were held in place by nuts on the ends of the bolts.

Appellants employed workmen to take down the joists. Patrick O'Hara, as the representative of appellant, had

charge of the men and the work. The workmen were divided into three parties, one to remove the nuts from the bolts, another to knock the joists from the bolts, and the third to receive the joists and to carry them away. The joists were about eight feet above the floor of the room.

During the early part of the forenoon the method of work was, for the first party of workmen to loosen the nuts, leaving them attached by one or two threads only, and then, when a particular joist was to be taken down, for the workmen of the third party to remove the nuts entirely and to receive the joists which were knocked down by the workmen of the second party who were stationed on the girders.

While the nuts were attached to the bolts by one or two threads, there was no danger of injury to the workmen by the falling of the joists, and the workmen passed from one girder to another by walking on the joists. In fact there is evidence to show that O'Hara sanctioned, if he did not direct, the use of the joists for this purpose. When the nuts were wholly removed, however, some of the joists would fall with a slight blow, or with the weight of a man, and it was unsafe for the workmen to use this means of passing from one girder to another. Appellee was aware of this fact, as he admits in his testimony.

During the forenoon, and after the work had been in progress for some time, O'Hara ordered the workmen to remove the nuts entirely in the first instance. This command was evidently given for the purpose of saving time.

Appellee swears that he did not hear the foreman's order and insists that it was the foreman's duty to give him notice of this important change in the method of work. O'Hara swears that the order was given in a loud tone of voice, so that all the workmen could hear. Others who were at work near appellee heard the command. The evidence tends to show that appellee must have known of the change. The fact that the workmen below him were no longer required to finish the removal of the nuts must have been noticed even by an ordinary observer of what was going on.

About half an hour after work had been resumed in the afternoon, the workmen were commanded by the foreman to take down another section of joists. Appellee undertook to walk on two joists to the next girder, when the joist on which his right foot rested gave way, and he fell with the joist to the floor.

He was injured and sued appellant for damages. He recovered a judgment in the Circuit Court for $1,500 and the case is before this court on appeal from that judgment.

Counsel for appellant have argued at length the question of variance between the declaration and the evidence. If there is such a variance it is exceedingly technical. We would disturb the verdict very reluctantly on that ground. The object of pleading is to apprise the opposite party of the charge against him, or of the defense interposed, so that due preparation for trial may be made, and not to furnish a sword for defeating a good case on technical and fanciful distinctions, which in no manner interfere with the proper decision of the case on its merits. The most that can be said is that we have here a defective statement of a good cause of action. But the objection to the declaration can be removed by amendment before another trial, and with this suggestion we pass to the consideration of a more serious question.

It was a close and critical question under the evidence whether the change in the method of work was made without the knowledge of appellee, derived either from actual notice or observation. There were other hazards in the prosecution of this work than that arising from the change under discussion, and these hazards were open and known, and were voluntarily assumed by the workmen, so that no recovery for injuries resulting therefrom could be sustained. Hence it was the duty of the court to confine the jury to the negligence which has been mentioned as being the only ground of recovery, and not to leave them, unbridled and unconfined, to render a verdict upon some other ground simply becuase the work was hazardous in general.

The rule thus laid down was violated by the following instruction given at the request of appellee:

"The court instructs the jury that the master is bound to use ordinary care to provide machinery and appliances reasonably safe and suitable for carrying on the business in which the servant is engaged, and a reasonably safe place for him to work in, while so engaged in his service. And if the jury believe from the evidence that the defendant on the 6th day of February, 1893, was possessed of the packing-house in question, and then had the plaintiff and other servants engaged in remodeling and repairing the same, as alleged in the declaration, and that the defendant failed to exercise ordinary care to furnish the plaintiff with a reasonably safe place to work in, while so engaged in its said work, and that the place so furnished to plaintiff was dangerous, and that the plaintiff while in the discharge of his duty with due and ordinary care for his personal safety, and to prevent injury, and without notice of such danger, was in consequence of said failure and negligence of the defendant, then and there injured, then the jury will find for the plaintiff, and assess his damages at such sum as they believe from the evidence to be just compensation for the injury so sustained, not, however, to exceed the amount sued for."

The negligence on the part of appellee, which is made the basis of recovery under this instruction, is very general indeed, that is to say, that appellant did not furnish appellee a reasonably safe place in which to work, and that the place so furnished was dangerous. The generality of this language allows the imagination too much liberty for the proper adjustment of the differences between the parties. No other instruction was given for appellee on this point, and the limitations imposed by instructions given for appellant are not such as to cure the error under consideration.

The only rule as to the measure of damages given to the jury is to be found in the latter part of the instruction quoted. Appellant requested the court to instruct the jury that damages could not be allowed for permanent injuries, unless it was reasonably certain that permanent injuries had been received. To say "reasonably certain" is practically the same as to say "probable."

The instruction was refused. We think it should have been given. But it is said that the instruction was not presented to the court within the time required by a certain rule of court then in force. Even if this rule, which requires instructions to be presented to the court before the commencement of the closing argument, were properly before us, there is nothing in the record to show when this instruction was presented, or that it was refused because not presented within the time prescribed. The record states explicitly that appellant asked the court to give the instruction, and that the court refused to give it. An exception was taken to this ruling. If the refusal to give the instruction was for the reason stated, appellee should have made that fact to appear in the bill of exceptions. The mere statement on the margin of the instruction, "refused because not offered" is not sufficient.

The record shows that the instruction was offered, and this marginal statement shows no more than that the instruction was refused. Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573.

For the errors above indicated, the judgment is reversed and the cause is remanded.