## ROCK SPRINGS NATIONAL BANK v. LUMAN.

Evidence — Declarations of Agent—Trial on Erroneous Theory.

1.  The declarations or admissions of a bank cashier in a matter wherein he is acting individually and not for the bank are inadmissible against the bank.

2.  To show that the cashier is acting in his individual capacity evidence that during the time in question he was absent from the bank and received no compensation from it for services as cashier, is competent, and its exclusion error.

3.  It is the right of parties to assume, in the absence of countervailing rulings or indications, that a court will ad-

here to a theory clearly indicated by a ruling. Where the theory thus indicated is wrong, and is such as will probably lead to an erroneous decision, it will be presumed on appeal, nothing to the contrary appearing, that the case was tried on the theory indicated by the ruling.

[Decided December 28, 1894.]

(A rehearing was granted in this case. See 42 Pac., 874; 43 Pac., 514.)

ERROR to District Court for Sweetwater County.    HON. JESSE KNIGHT, Judge.

Action by Abner Luman against the Rock Springs National Bank. Judgment for plaintiff. Defendant prosecuted error. The material facts appear in the opinion.

*E. E. Enterline, A. C. Campbell* and *R. W. Breckons,* for plaintiff in error.

*C. C. Hamlin,* for defendant in error.

CORN, JUSTICE.

One Frank Pfeiffer was indebted to defendant in error, Abner Luman, in the sum of $24,100, which had been reduced by payments to $19,100. Pfeiffer was also cashier of the plaintiff in error. The above indebtedness of Pfeiffer to Luman was secured by a chattel mortgage upon a herd of 6,800 head of sheep. The mortgage was duly recorded, and, during the time of the transactions out of which this suit arose, was a valid and subsisting lien upon the sheep. Pfeiffer was also indebted to the plaintiff bank, of which he was cashier, and also to Tim Kinney & Co., Kinney being president of the bank. The mortgage contained a provision permitting Pfeiffer to market, sell and dispose of portions of the property, and providing that the proceeds should be applied toward the payment of the indebtedness secured. About the 5th of November, 1893, Pfeiffer left the bank to go to his sheep ranch, and was not at the bank, or in the active performance of his duties as cashier again until the 29th of the same month. During this time, under the provisions of the mortgage, and with the consent of Luman,

he shipped to Chicago 1,356 head of the mortgaged sheep, going with the shipment himself. He sold the sheep, and realized $2,880 net from the sale. He brought this amount with him in Chicago exchange on his way home, as far as Laramie, Wyoming, where he stopped over. At Laramie, on the 27th, having endorsed the draft (which was made payable to himself) to the defendant, he mailed it to George H. Goble, vice president of the bank, with the following letter of transmittal:

"Laramie, Wyo., Nov. 27, 1893.
Geo. H. Goble, Vice President,
    Rock Springs, Wyo.,
Dear Sir:—
  Herewith please find Chicago exchange for $2,880, which please place to my credit, and oblige,    Yours truly,
                                    Frank Pfeiffer."

Goble, who was vice president of the bank, and, in the absence of Pfeiffer, acting cashier, received the draft on the 28th, and on the same day, applied $1,079.34 on Pfeiffer's account with the bank, in payment of an overdraft, and $987.25 in payment of a note of Pfeiffer's due to the bank. He applied the remainder of the amount of the draft, amounting to $813.41, upon the debt of Pfeiffer to Tim Kinney & Co. Goble testifies that this last application was made after Pfeiffer's return on the 29th, and by his direction. Pfeiffer states that the application of the whole amount of the draft was made without his knowledge or consent, but that he made no objection, when informed of it on the morning of the 29th, not wishing to antagonize the bank. Afterwards, upon learning of the application of the money by the bank, Luman, the defendant in error, made demand for the amount of $2,880, upon the ground that it was the proceeds of sheep mortgaged to him, and payment being refused, brought suit. The plaintiff (defendant in error) sets out in his petition the lien of the mortgage, and that there was due upon it more than the sum of $2,880, the sale of the mortgaged property

under the terms of the mortgage, the receipt of the money by the defendant bank, and its refusal to pay, and alleges that the bank had notice and knew when it received it that the sum was the proceeds of property mortgaged to plaintiff, and was the money of the plaintiff.

The defendant answered, admitting the receipt of the draft, but denying any knowledge of the source from which the money was derived with which it was purchased; alleging Pfeiffer's indebtedness to the bank, and its application of that amount, and that afterwards, on the 29th of November, it applied the balance to the payment of the debt of Tim Kinney & Co. by Pfeiffer's instructions. The court below tried the case without a jury, and found for the plaintiff generally in the sum of $3,024. The defendant presented its motion for a new trial, which was overruled and judgment entered for the plaintiff.

The plaintiff in error assigns numerous errors, eighteen in all; but it will not be necessary to consider them each separately, or in their numerical order. The question presented is that of notice to the bank. Upon the trial, the court, over the objection of the defendant, permitted the plaintiff, Luman, and his attorney, Mr. Hamlin, to testify to certain conversations with Pfeiffer in reference to the transaction. These conversations were had after the return of Pfeiffer from Chicago, and after the various steps of receiving the draft by the bank, and its application of the proceeds to the payment of its own claims and that of Kinney & Co., had been taken, and the transaction out of which the suit arose was completed. If the statements of Pfeiffer, made at this time, and under the circumstances of this case, would bind the bank, then the testimony was properly admitted. Otherwise, it was hearsay, and its admission was error. We think it is quite clear that in this entire transaction, Pfeiffer was acting in his individual capacity, and not as an officer or agent of the bank. It was his individual indebtedness to Luman, and the bank was in no way connected with it. The mortgaged property was his, and the bank had no interest in it. When he left Rock Springs on Nov. 5, to go to his sheep ranch,

he went upon his own private business, and there is no hint anywhere in the evidence that his errand had any connection with the business of the bank. In the shipment of the sheep to Chicago, and his journey there with them, in selling them, and obtaining the money for them, there is no intimation in the testimony that he represented the bank, but all the evidence shows that he was acting for himself. In remitting the money, he acted as any other customer of the bank, requesting, by his letter, that the amount be placed to his credit. We cannot conceive that in any of these matters he represented the bank, or that his acts or declarations could bind it. He was not authorized in these matters to speak for the bank. It follows that his declarations or conversations after the transaction were not evidence against the bank, and were improperly admitted. 1 Mor. Priv. Corp., Sec. 540a; Merchants Natl. Bank of Gardiner v. Clark et al., 34 N. E. Rep., 910.

The defendant below also offered to show by the testimony of Goble that, from Nov. 5 to Nov. 29, the time covered by these transactions, Pfeiffer was absent from the bank, and received no compensation from the bank for any services as cashier or otherwise. Upon objection by the plaintiff, this testimony was excluded by the court as immaterial. Plainly, the object of offering this testimony was to show more clearly that Pfeiffer was not acting for the bank, and could not bind it,—that in this transaction he was not its officer or agent, and as tending to the conclusion that notice to Pfeiffer was not notice to the bank, and that the knowledge of Pfeiffer could not be imputed to the bank. This was material, and should have been admitted. The question at issue was one of notice. Upon what theory was it excluded as immaterial?

The case being tried without a jury, there were no instructions, and the court made no written findings embodying the law applicable to the case, as determined by the court. So that we are without any direct statement by the court of its view of the law as applied to the facts of the case. But it seems to be contended here by counsel for defendant in error that, it being proven generally that Pfeiffer was cashier of

the defendant bank at the time of the trial, and during all
the period covered by the transaction in evidence in the case,
it therefore follows that the bank is bound by the acts and
declarations of its cashier, and that it would not be relieved
from liability charged to have been incurred by the acts or
knowledge of its cashier, by showing that in the particular
transaction, he acted, not for the bank, but for himself, and
in antagonism to its interests. The declarations of Pfeiffer
after the transaction were apparently offered and, we must
conclude, admitted upon this theory. The testimony of Goble
that Pfeiffer, during this time, did not act or receive pay as
cashier, was, it seems, objected to and excluded as imma-
terial, upon the same theory, for upon no other theory could
it be immaterial. The court then having admitted the evi-
dence of conversations with Pfeiffer after the transaction,
over objection, and having afterwards refused to strike it out
upon motion, the presumption is that it treated it as com-
petent and material, and acted upon it as such in making up
its decision. And having rejected as immaterial the evi-
dence that Pfeiffer during this time was absent from the
bank, and receiving no compensation for any services, the
presumption is that the court adopted the theory of the
plaintiff below, and in making up its decision, treated Pfeiffer
as the agent of the bank in this transaction, and held it
liable for his acts and declarations, and imputed his knowl-
edge to it as notice. This was error, for the question was
one of notice. And we think it was a close question upon
the competent evidence in the case, leaving out of con-
sideration such notice as would have been brought home to
the bank if bound by the knowledge of Pfeiffer. It ought,
therefore, to be closely and accurately tried, upon the com-
petent evidence presented.

It is urged that all, or substantially all, of this testimony,
except, perhaps, the fact offered to be proven by Goble that
Pfeiffer received no compensation during his absence, came
out in the trial of the cause, without objection, from other
sources, and that therefore, the plaintiff in error is not preju-
diced. But this does not meet the difficulty or correct the

error referred to. "It is the right of parties to assume, in the absence of countervailing rulings or indications, that a court will adhere to a theory clearly indicated by a ruling. Where the theory thus indicated is wrong, and is such as will probably lead to an erroneous decision, it will be presumed, on appeal, nothing to the contrary appearing, that the case was tried on the theory indicated by the ruling." Elliott's App. Proc., Sec. 591.

The theory indicated here is that Pfeiffer should be deemed cashier and authorized agent of the bank in the particular transaction, the bank to be bound by his acts and declarations, and his knowledge imputed to the bank as notice, and it must be presumed that the court tried the case on that theory. The same reasoning disposes of the claim of the defendant in error, that "there is sufficient evidence in the case of the fact that the plaintiff in error had knowledge of the rights of the defendant in error, in the draft in question, through its vice president, Goble, to sustain the action of the lower court." There is nothing in the record to indicate that the lower court so decided. It may have given slight consideration, or none at all, to testimony tending to show that the bank had knowledge through Goble, deeming it unnecessary, as the proof seemed ample that it had notice through its cashier, Pfeiffer, for it is presumed to have adhered to the theory indicated. We are of opinion that the parties are entitled to a trial upon the issue presented by the pleadings; that is, that the sum in question belonged to the plaintiff, being the proceeds of property mortgaged to him, that the defendant had notice of this fact at the time it received the draft from Pfeiffer, and having such notice, refused to pay it over on demand.

*The decision will be reversed, and the case remanded for a new trial.*

GROESBECK, C. J., and CONAWAY, J., concur.