Lloyd K. HASHIMOTO,
Appellant (Plaintiff),

v.

MARATHON PIPE LINE CO., a Delaware corporation, and Penton Jerry Dixon, Appellees (Defendants).

MARATHON PIPE LINE CO., a Delaware corporation, and Penton Jerry Dixon, Appellants (Defendants),

v.

Lloyd K. HASHIMOTO,
Appellee (Plaintiff).

Nos. 87-120, 87-121.

Supreme Court of Wyoming.

Jan. 6, 1989.

John E. Stanfield and Bruce Waters of Smith, Stanfield & Scott, Laramie, for Hashimoto.

Richard E. Day of Williams, Porter, Day & Neville, Casper, and Daniel J. Sullenbarger of Marathon Pipe Line Co., Houston, Tex., for Marathon Pipe Line Co.

Before CARDINE, C.J., THOMAS, URBIGKIT, and MACY, JJ., and BROWN, J., Ret.*

URBIGKIT, Justice.

These cross appeals involve two automobile accidents where the same person was victimized by two rear-end collisions in about eight months. Victim Lloyd K. Hashimoto (Hashimoto) is appealing his jury verdict awarded damages as inadequate based on several contended trial errors. The colliding vehicle's driver, Penton Jerry Dixon (Dixon), and his employer, Marathon Pipe Line Company (Marathon), are appealing the award of deposition costs to Hashimoto and contended inadequate award to them of other litigative costs.

*Retired June 30, 1988.

Hashimoto comprehensively phrases the issues for which he seeks review as:

1. Is it fair to relieve the defendant of any burden of proof as to affirmative defenses asserted by him?

2. Is it fair to force the plaintiff to disprove affirmative defenses asserted by the defendant?

3. Should the Wyoming Supreme Court adopt the comprehensive *Restatement* rules as to apportioning damages in cases involving multiple tort-feasors?

4. Between an injured victim and a negligent wrongdoer, who should bear the burden of proof as to whether the harm and the damages are divisible and can be apportioned?

5. Is it fair to relieve a wrongdoer from any burden of proof on his claim that a second collision caused some or all of the injured victim's damages?

6. Is it fair to force the plaintiff to prove his damages to a "reasonable certainty" in a case involving apportionment of damages?

7. Should the "reasonable certainty" standard be abandoned in Wyoming as to the proof of damages?

8. Is it time to replace "reasonable certainty" and "reasonable medical certainty" with "reasonable probability" and "reasonable medical probability" in civil cases? [Emphasis in original.]

Dixon and Marathon tender these issues:

1. The trial court abused its discretion in the award of discovery deposition costs to the Plaintiff for a deposition not used during the course of trial proceedings or during the trial itself.

2. The trial court abused its discretion in failing to award costs to the Defendant for pretrial interviews with Plaintiff's examining physicians and for expert medical witness fees for the time actually spent in court by subpoenaed medical witnesses.

We affirm on Hashimoto's appeal, although determining that reasonable certainty is not the appropriate standard of

damage proof in civil cases, and affirm awarded costs on the cross appeal.

## FACTS

Hashimoto, while stopped to make a left turn, was rear-ended by Dixon as driving a Marathon vehicle. Dixon was speeding, ran a stop sign, and having consumed several beers within working hours immediately before, was under the influence of alcohol—with a blood alcohol test of .197%. Neck injuries to Hashimoto resulted from this first collision.

The second collision occurred about eight months later on October 9, 1984; coincidentally while Hashimoto was again stopped, waiting to make another left-hand turn. As now rear-ended by Todd Morgan (Morgan), this second collision caused injuries to Hashimoto's lower spine, with some aggravation of the earlier collision neck injuries.[1]

Hashimoto filed a suit for damages resulting from both collisions on December 16, 1985, by suing Dixon, Marathon,[2] and Morgan,[3] including claims for punitive damages against Marathon and Dixon. Marathon was awarded summary judgment on punitive damages. In advance of trial, the trial court ruled that because of the second collision, Hashimoto had to meet the burden of proving to a "reasonable certainty" that his subsequent problems were caused by the first collision and not the second to recover from the two remaining defendants, Dixon and Marathon. Jury instructions as subsequently given also reflected that same decision. The jury returned a judgment awarding Hashimoto $4,500 for actual damages and punitive damages against Dixon of $3,000. Various motions

were heard regarding awardable costs with judgment for a net award to Hashimoto of $241.49 ($806.49 as offset by Marathon's and Dixon's awarded costs of $565). Following a denied motion for new trial by Hashimoto, both parties timely appealed.

## ANALYSIS

Although the parties collectively phrased numerous issues, we choose to address them by three categorizations: (1) burden of proof; (2) reasonable certainty; and (3) costs.

1.  *Burden of Proof When Successive Injuries Occur.*

■ Hashimoto contends that Marathon and Dixon have the burden in a successive impact case to prove and apportion the damages resulting from injuries for which they are responsible or, if that apportionment is not possible, Marathon and Dixon may then be liable for all damages. We disagree.

For this first impression issue in this state, the trial court correctly applied the reasoning of *Bruckman v. Pena,* 29 Colo. App. 357, 487 P.2d 566 (1971). *Bruckman* is a case remarkably similar where the plaintiff was injured in two automobile accidents occurring within a little less than a year of each other. Defendants were the owner and driver of the truck involved in the first collision, and the plaintiff claimed aggravation of the first injuries caused by a second collision. That court held it was error to give an instruction which placed the burden of proving plaintiff's disability on the defendants since their liability should be limited to the damages proxi-

---

1.  For recent informative discussions of soft tissue injuries such as neck and back injuries, see 2 S. Preiser, M. Preiser and C. Wecht, Handling Soft Injury Cases: Medical Aspects (1987) and H. Rein, Thermographic Evidence of Soft Tissue Injuries (1987).

2.  Originally, Marathon Oil Company was made a party in this case as well as Marathon Pipe Line Company. Both Marathons answered the complaint, with Marathon Oil Company essentially alleging that their only connection with the incident was that they were possibly the owners of Marathon Pipe Line Company. It appears that Marathon Oil Company just

"dropped out" of the suit, although a motion was made to dismiss them, there is no order in the record reflecting such a disposition. However, the parties apparently agreed to treat Marathon Oil Company as dismissed as it was left off the caption from the point in time when summary judgment on punitive damages was awarded. Henceforth, "Marathon" will be used to refer to Marathon Pipe Line Company only.

3.  Following settlement between Morgan and Hashimoto, that claim was dismissed with prejudice.

mately caused by their negligence. *Bruckman,* 487 P.2d at 568.

We are cognizant, as was the Bruckman court, of the principle that when a tort-feasor injures someone with a pre-existing condition, he is liable for the total damage when no apportionment between the pre-existing condition and the damage defendant caused can be made. Thus, the defendant must take his victim as he finds him. See *Alexander v. White,* 488 P.2d 1120, 1123 (Colo.App.1971), where the Bruckman situation is distinguished from a pre-existing condition scenario.

> [B]ut it is quite another thing to say that a tort-feasor is liable, not only for the damage which he caused, but also for injuries subsequently suffered by the injured person.

*Bruckman,* 487 P.2d at 568.

■ The ultimate injuries were caused by the second collision which is a distinct intervening cause because the first injuries had stabilized. Consequently, it would be inappropriate to hold Marathon and Dixon liable for the entire damage when no correlation between the two accidents was shown. Essentially, Hashimoto did not prove that the second collision, which was the subsequent injury-producing act, was a sequela of the first collision. Additionally, no foreseeability of the second accident was shown by Hashimoto and consequently, the first injuries were not the proximate cause of the second accident. Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force as "based upon reasonable probabilities and which precludes the fact finder from having to make an arbitrary choice between unproved conclusions." *State Nat. Bank of El Paso v. Farah Mfg. Co.,* 678 S.W.2d 661, 691 (Tex.App.1984).

Hashimoto has shown no reason for this court to abandon the general rule

> that one injured by the negligence of another is entitled to recover the damages proximately caused by the act of the tort-feasor, and the burden of proof is upon the plaintiff to establish that the damages he seeks were proximately

caused by the negligence of the defendant.

*Bruckman,* 487 P.2d at 568. See also Annotation, *Proximate Cause: Liability of Tortfeasor for Injured Person's Subsequent Injury or Reinjury,* 31 A.L.R.3d 1000, 1003–04 (1970).

In accord with our result, see *Guerrero v. Bailey,* 658 P.2d 278, 279 (Colo.App. 1982), where the original and subsequent injuries were not physical in nature; *Brown v. Kreuser,* 38 Colo.App. 554, 560 P.2d 105, 109 (1977); *Alexander,* 488 P.2d at 1125–26; *Jurney v. Lubeznik,* 72 Ill. App.2d 117, 218 N.E.2d 799, 806 (1966); *Becker v. D & E Distributing Co.,* 247 N.W.2d 727, 729 (Iowa 1976); *McGuire v. Oliver,* 227 So.2d 149 (La.App.1969), where the plaintiff was involved in three accidents within seventeen days; *Bolin v. Hartford Acc. & Indem. Co.,* 204 So.2d 49, 51 (La. App.1967); *Watkins v. Hand,* 198 Neb. 451, 253 N.W.2d 287, 289 (1977); *Armstrong v. Bergeron,* 104 N.H. 85, 178 A.2d 293, 294 (1962); *Williams v. Gragston,* 7 Ohio App.3d 369, 455 N.E.2d 1075 (1982); and 22 Am.Jur.2d *Damages* § 115 (1988). See also G. Douthwaite, Jury Instructions on Medical Issues, ch. 9 at 512 (3d ed. 1987) which differentiates the Bruckman situation from one where the second injury is a result of ordinary medical malpractice.

This decision on burden of proof dispositively resolves Hashimoto's first five issues as presented by these facts.

*2. Reasonable Certainty.*

■ Hashimoto's next three issues concern the phraseology of jury instructions. Hashimoto alleges error in giving three instructions:

### INSTRUCTION NO. 13

The defendants in this case have admitted liability and therefore you must fix the amount of money which will reasonably and fairly compensate Hashimoto for those elements of damage proved by the evidence to have been caused by the negligence of the Defendants, taking

into consideration the nature, extent and duration of the injury.

The claimed elements of damage are:

(a) The pain and suffering experienced as a result of the injuries and those *reasonably certain* to be experienced in the future.

(b) Disability.

(c) Loss of enjoyment of life. The award for this specific element should not duplicate the award given for any other element of damage, and any loss of enjoyment of life *reasonably certain* to be experienced in the future.

Whether any of the elements have been proved is for you to determine. [Emphasis added.]

## INSTRUCTION NO. 14

The objective sought in awarding damages is to compensate the Plaintiff for loss, and although damages can not always be calculated with absolute certainty, they must be susceptible of ascertainment with *a reasonable degree of certainty* to be recoverable. Remote, uncertain and conjectural or speculative damages are not allowed. [Emphasis added.]

## INSTRUCTION NO. 15

There is no formula the court can give you for the determination of damage for pain and suffering or loss of enjoyment of life or disability, or any future damages as may be reasonably certain to arise. It is not necessary that any witness shall have expressed any opinion as to the dollar amount of damages therefor. Your award, if any, should be such sum as will fairly and adequately compensate the plaintiff. Furthermore, the arguments of counsel as to the amount of damages is not evidence of reasonable compensation. The amount awarded, if any, rests within your sound discretion and is for you to determine, taking into consideration all the evidence in this case and from your knowledge, observation, and experience in life. Your award, if any, should be for what damages are reasonable and just.

It is insufficient for the litigant in objection to merely state that the instruction is not complete or an accurate statement of the law. *Runnion v. Kitts*, 531 P.2d 1307 (Wyo.1975). See also *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.*, 743 P.2d 880, 885 (Wyo.1987); *Logan v. Pacific Intermountain Express Co.*, 400 P.2d 488 (Wyo.1965); *Com. v. Duke*, 750 S.W.2d 432 (Ky.1988); and W.R. C.P. 51.

> Error may not be assigned unless objection has been made thereto with a distinct statement of the matter to which objection is made and the grounds for this objection, and indicating with definiteness and particularity the error asserted, * * *.

*Texas Gulf Sulphur Co. v. Robles*, 511 P.2d 963, 968 (Wyo.1973).

> "In reviewing alleged errors in jury instructions, a finding of error is not alone sufficient to reverse; prejudicial error must be found. *Walton v. Texasgulf, Inc.*, Wyo., 634 P.2d 908 (1981). Prejudicial error is never presumed; it must be established by the parties. *Pure Gas and Chemical Company v. Cook*, supra [526 P.2d 986 (Wyo.1974)]."

*Goggins v. Harwood*, 704 P.2d 1282, 1292 (Wyo.1985) (quoting from *Cervelli v. Graves*, 661 P.2d 1032, 1036 (Wyo.1983)).

> In order to hold an improper instruction reversible, the record must show that substantial rights were affected. Rule 7.04, W.R.A.P. For an error to be harmful, there must be a reasonable possibility that, in the absence of error, the verdict might have been more favorable to a party, and the burden is on the appellant to show where the error is prejudicial. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). Merely showing an error occurred does not create a presumption of prejudice as injury to an appellant. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984).

*Condict*, 743 P.2d at 885.

Hashimoto's claimed error with the jury instructions pertains to the burden of proof and that the future damages had to be

proven on a basis of "reasonable certainty" rather than "reasonable probability" or "reasonable medical probability." The issue as to the burden of proof was properly dealt with in the preceding section and thus, there was no error giving the instructions that required Hashimoto to prove his own damages.

■ Initially, we note that Instruction No. 15 was not objected to by Hashimoto. W.R.C.P. 51 mandates in part that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Thus, this court is precluded from reviewing any potential error with this instruction unless the giving of it amounted to plain error. *Cutbirth v. State*, 663 P.2d 888 (Wyo.1983); *Morris v. State*, 644 P.2d 170 (Wyo.1982); *Alberts v. State*, 642 P.2d 447 (Wyo.1982).

Instruction Nos. 13 [4] and 14 [5] were properly objected to below; therefore, the propriety of giving these two instructions which utilized the "reasonable certainty" standard will be addressed.[6]

While we note that the phrase "reasonable certainty" is used in many of the ought to be "reasonable probability" or "reasonable medical probability," but Hashimoto's offered instruction replaces "reasonable certainty" with "probably" alone. Additionally, we note that the proffered instruction itself is internally inconsistent in that the standard is changed to "probably" throughout part of the instruction, but in subpart (d), the medical expenses are still to be proved "reasonably certain." Consequently, while we cannot say that the proffered instruction should have been given, we do find the standard of "reasonable probability" or "reasonable medical probability" to be a more appropriate one. The proffered instruction outlined:

> If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for those elements of damages proved by the evidence to have been caused by the negligence of the defendant, taking into consideration the nature, extent and duration of the injury.
> The claimed elements of damage are:
> (a) The pain and suffering experienced as a result of the injuries and which will *probably* be experienced in the future.
> (b) Disability and/or disfigurement.
> (c) Loss of enjoyment of life. The award for this specific element should not duplicate the award given for any other element of damage. And any loss of enjoyment of life which will *probably* be experienced in the future may also be awarded.
> (d) Medical expenses. The reasonable expense of necessary medical care, treatment, and services received to date, and any medical expense *reasonably certain* to be incurred in the future.
> Whether any of these elements have been proved is for you to determine.
> GIVEN:
> _____
> JUDGE
> Authority: Adapted from Instruction No. 4.01, W.C.P.J.I. [Emphasis added.]

4. [MR. STANFIELD:] The plaintiff objects to Instruction # 13 on the grounds that it is inappropriate to require the plaintiff to prove elements of damage on the basis of those which are "reason[a]bly certain" to the extent that is expressed in the Wyoming patterned jury instructions. There was a dispute on that, and in fact, I think there is a sub-note that there were objections that the proper burden should be those reasonably probably to be experienced.

5. [MR. STANFIELD:] And Instruction # 14, we object to for the same reason. It's duplicative, it's slanted directly to the defendants. They already have—they are already instructed, I believe, in 1 and 2, that pertain to, oh, require certainty and prohibiting speculative damages, and it's put in twice and it's highly prejudicial for that reason—and, it's contrary to law.

* * * * * *

MR. STANFIELD: I have to go back and vehemently object to your # 14, because I submitted a # 27, which I submit is the law, and which applies the conjecture and speculation to all evidence and theories and notions and so on, and the Court's Instruction 14 limits it exclusively to damages and that is not fair. The defense has no right to engage in speculation. I think the requested 27 is fair and cuts both ways.

THE COURT: That's in—takes in 1 or 2, that language is in 1 or 2.

MR. STANFIELD: Okay, but that brings up an issue that I'll put in a Motion In Limine later, but I can see it is in there. I still re-assert the objections that I had to 14 for the reason that it's unfairly slanted against the plaintiff and duplicative of the other one, which is not necessary under the circumstances, and that our 27 is a correct statement of the law, is fair and ought to have been given.

6. We are cognizant that the instruction Hashimoto proffered is not a correct statement of the present law and is itself inconsistent. Hashimoto objects on the basis that the proper standard

pattern civil damage instructions,[7] we find the standard to be illogical and thus improper.[8] *McElroy v. Luster*, 254 S.W.2d 893 (Tex.Civ.App.1953) provides a discussion of the three views and differentiated approaches. The first comes from jurisdictions which adopt the "reasonable probability" rule, the second view as an acceptance by some jurisdictions of the "reasonable certainty" rule with a liberal interpretation of the phrase which equates "reasonable certainty" with "reasonable probability," and the third view utilizes the "reasonable certainty" rule with a strict requirement that "reasonable certainty" means "free from doubt" or "reasonably free from doubt." [9]

Wyoming's view of apparently accepting the "reasonable probability" rule can be traced back to an early case of *Mahoney v. Pearce*, 38 Wyo. 151, 265 P. 446, 449 (1928), interpreting the phrase "reasonably compensate" in a jury instruction involving personal injury to not be prejudicial because "future annoyance and pain was probable * * *." See *Borzea v. Anselmi*, 71 Wyo. 348, 258 P.2d 796, 805 (1952) where Chief Justice Blume was faced with a situation where the trial court refused the requested instruction which included the "reasonable

---

7. For examples, see W.C.P.J.I. No. 4.01 (1981); W.C.P.J.I. No. 4.02 (1981); and W.C.P.J.I. No. 4.09 (1981).

8. Noteworthy is the Colorado jury instruction pertaining to the Bruckman situation in which the terminology "reasonably certain" is not used.

    6:9  CONDITION AGGRAVATED BY LATER INJURIES
    *  *  *  *  *  *

    If you find after the occurrence of (insert date) plaintiff, (name), was injured and that later injury aggravated or made worse any ailment or disability of the plaintiff caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant, (name), and that the later injury was not caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant, then the plaintiff is entitled to recover damages for the ailment or disability caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant, but he is not entitled to recover damages for any later injuries he may have incurred which were not caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant.

    If you find that a later injury aggravated or made worse any ailment or disability caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant and that the later injury was not caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant, then it is your duty to determine, if possible, the amount of damages caused only by the (insert appropriate description, e.g., "negligence"), if any, of the defendant. But if you find that the evidence does not permit such a determination, then the plaintiff is entitled to recover damages caused by the (insert appropriate description, e.g., "negligence"), if any, of the defendant between (insert date of occurrence between plaintiff and defendant) and (insert date of plaintiff's later injury), but he is not entitled to recover damages after (insert date of plaintiff's later injury) for the ailment or disability.
    CJI–Civ.2d 6:9 (1988).

9. Perhaps the inquiry was best stated by Justice Jacob Fuchsberg as one of the more urbane but practical jurists of recent time:

    The rule that evolves appears to be the one well stated in *Matter of Miller v. National Cabinet Co.*, 8 N.Y.2d 277, 282, 204 N.Y.S.2d 129, 133, 168 N.E.2d 811, 813 [ (1960) ] where the court made clear that it is not a dictionary dilettantism that is to govern, but whether it is "reasonably apparent" that "the doctor intends to signify a probability supported by some rational basis."
    *Matott v. Ward*, 48 N.Y.2d 455, 423 N.Y.S.2d 645, 648, 399 N.E.2d 532, 535 (1979).
    Where in discussion, it was recited:
    The foregoing standards of "possibility," "probability," "medical certainty," and "did" are only illustrative; in numerous other cases the courts permit or require opinions in such terms as "most probable," "definite possibility," "most likely," "reasonable probability," and "more likely than not."
    Martin, *The Uncertain Rule of Certainty: An Analysis and Proposal For a Federal Evidence Rule*, 20 Wayne L.Rev. 781, 785 (1974) (footnotes omitted). See also Small, *Gaffing at a Thing Called Cause: Medico–Legal Conflicts in the Concept of Causation*, 31 Tex.L.Rev. 630 (1953).
    See also a succeeding case, *Aspiazu v. Orgera*, 205 Conn. 623, 535 A.2d 338, 342–43 (1987) (quoting from *Matott*, 48 N.Y.2d at 463, 423 N.Y.S.2d 645, 399 N.E.2d 532):
    While we do not believe that it is mandatory to use "talismanic words" or "the particular combination of magical words represented by the phrase 'reasonable degree of medical certainty [or probability]'"; * * * there is no question that, to be entitled to damages, a plaintiff must establish the necessary causal relationship between the injury and the physical or mental condition that he claims resulted from it.

certainty" terminology, and one issue on appeal was whether the deletion of the phrase "reasonable certainty" was in error in the future pain and suffering jury instruction. This court found no error because the instruction amounted to the Mahoney requirement. *Borzea,* 258 P.2d at 806.

> "The use of the terms 'reasonably certain' in defining the degree of proof required of the defendant, was clearly objectionable. 'Certain' means 'free from doubt,' (Webst. Dict. word 'certain;') and to say that proof of a fact must be made reasonably certain is by the literal import of the words tantamount to saying the proof must be made beyond a reasonable doubt. This has been expressly held as to the phrase 'moral certainty,' * * * which we take it is equivalent to the words 'reasonable certainty,' * * *."

*McElroy,* 254 S.W.2d at 895 (quoting from *St. Louis, A. & T. Ry. Co. v. Burns,* 71 Tex. 479, 9 S.W. 467, 468 (1888)).

> The phrase "with reasonable certainty" went far beyond the simple requirement of a preponderance of the evidence. It put the unwarranted burden on plaintiff of proving defendant's negligence by a much higher degree of proof. To require plaintiff to prove defendant's negligence to "a reasonable certainty" was to require him to prove it to such degree as to leave no reasonable doubt, which was equivalent to saying that he must prove it beyond a reasonable doubt. It is of course well known that in prosecutions by the State the guilt of a defendant must be proved "beyond a reasonable doubt" but that requirement has no place whatsoever in a civil action. *Payne v. Reed,* 332 Mo. 343, 59 S.W.2d 43 [ (1933) ].

*Stephens v. Coca–Cola Bottling Co. of St. Louis,* 215 S.W.2d 50, 55 (Mo.App.1948).

■ We note in *DeLuna v. State,* 501 P.2d 1021 (Wyo.1972) that this court used the terms "reasonable certainty" and "reasonable probability" interchangeably in a case involving exhibit tampering. However, the concepts behind the two phrases are not the same, and we hold that the words "reasonable probability" should more precisely be the standard employed in civil personal injury jury instructions to avoid confusion. As the Supreme Court of Errors of Connecticut in *Johnson v. Connecticut Co.,* 85 Conn. 438, 83 A. 530, 531 (1912) aptly phrased it:

> "Reasonable certainty" and "reasonable probability" bear no resemblance to each other, and judicial construction which brings them into apposite relation seems to us forced, perhaps, to save the appearance of a rule which violates a fundamental of the theory of evidence. This attempt has been aided by text-book writers who no doubt saw that the requirement of proof of future injuries to a reasonable certainty was an exception to the ordinary requirement of proof.

Justice Rose, dissenting in *Olson v. Federal American Partners,* 567 P.2d 710, 719 (Wyo.1977), pointed out the difference between "possible" and "probability," as both terms are used in a medical setting:

> We are involved in an area which does not lend itself to medical certainties— only to probabilities and likelihoods.

*Id.* at 724. Consequently, with damages in a personal injury situation dependent upon medical testimony as much as worker's compensation injuries are dependent upon medical certainty,[10] it makes no sense to hold injured parties to a standard of "reasonable certainty." See *Ortkiese v. Clar-*

---

10. We note the standard of "reasonable medical certainty" is used in many worker's compensation cases: *Matter of Injury to Carpenter,* 736 P.2d 311 (Wyo.1987); *Matter of Injury to Taylor,* 718 P.2d 63 (Wyo.1986); *Matter of Injury to Kemp,* 711 P.2d 1142 (Wyo.1986); *Nuanes v. State ex rel. Wyoming Worker's Compensation Div.,* 694 P.2d 86 (Wyo.1985); *Kaan v. State ex rel. Wyoming Worker's Compensation Div.,* 689 P.2d 1387 (Wyo.1984); *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Div.*

*v. Schwilke on Behalf of Schwilke,* 649 P.2d 218 (Wyo.1982); *Jim's Water Service v. Eayrs,* 590 P.2d 1346 (Wyo.1979); *Claim of Vondra,* 448 P.2d 313 (Wyo.1968). The propriety of that standard is not in question in this appeal since its correctness in that context is not here adjudicated as a personal injury damage case. In technical context of the words themselves, it may not be totally facetious to compare "reasonably certain" with "somewhat" pregnant or "half" dead.

*son & Ewell Engineering,* 126 So.2d 556 (Fla.1961) for a case finding error with the phrase "reasonable medical certainty" in the worker's compensation arena.

> From Hippocrates to the Mayos and the Oschners, the medical profession has progressed by research and experimentation, by chasing the guinea pig through the laboratory. In this manner it has progressed so rapidly to new and better methods of treatment, if it knew any such rule as reasonable medical certainty today, it would be discarded for a different one tomorrow, * * *.

*Id.* at 564.

For cases clearly finding fault with proving damages to a reasonable certainty as exceeding the burden of proof in civil cases, see *Leggett v. Illinois Central R.R. Co.,* 72 Ill.App. 577 (1897); and *St. Louis, A. & T. Ry. Co. v. Burns,* 71 Tex. 479, 9 S.W. 467, 468 (1888). In applying the English language as it is written, we would not find the phrases "reasonable probability" and "reasonable certainty" to be equivalent. *State ex rel. Kansas City Public Service Co. v. Shain,* 350 Mo. 316, 165 S.W.2d 428, 430 (1942); *Johnson,* 83 A. at 531. The term "reasonable probability" is equivocal, and is not synonymous with reasonable certainty. *Hallum v. Village of Omro,* 122 Wis. 337, 99 N.W. 1051, 1053 (1904).

For a case that refers to "reasonably certain" in an instruction for damages for future consequences of the injury as not equating with "reasonable probability," and finding the appropriate standard to be "reasonable probability," see *Gulf, C. & S.F. Ry. Co. v. Harriett,* 80 Tex. 73, 15 S.W. 556, 558–59 (1891). See *Brown v. Forrester & Nace Box Co.,* 243 S.W. 330, 331 (Mo.1922) for the proposition that changing the word "likely" in a jury instruction to "reasonably certain" caused the meaning of the instruction to substantially change, since "likely" referred to "probable" injury which would be one more reasonably expected to happen than not to happen, and a "reasonably certain" injury would be one that human experience shows nearly always results from such a defect.

Contrarily, some authorities have construed the phrases "reasonable certainty" and "reasonable probability" to be equivalent which redefinition we choose not to follow. See *Lane v. State Farm Mut. Auto. Ins. Co.,* 209 Neb. 396, 308 N.W.2d 503, 512 (1981); *Marion v. American Smelting & Refining Co.,* 192 Neb. 457, 222 N.W.2d 366, 368 (1974); *Wilkinson v. Dunbar,* 149 N.C. 20, 62 S.E. 748, 750 (1908); *Great Atlantic & Pacific Tea Co. v. Hughes,* 53 Ohio App. 255, 4 N.E.2d 700, 705 (1935); and *Holt v. School District No. 71 of King County,* 102 Wash. 442, 173 P. 335, 338 (1918). For a case finding the words "reasonably certain" to be the same as "probable," see *Swift & Co. v. Raleigh,* 54 Ill.App. 44 (1894).

We find error in the standard utilized to prove future earnings in both instructions given and the substitute instruction proposed by Hashimoto; however, we fail to see where Hashimoto has demonstrated a prejudicial error.

■ Although we find the use of "reasonable certainty" as an improper phrase, borrowed from the criminal context into the civil context, we do recognize the jury in this case still found for Hashimoto even when applying this greater burden of proof. See *St. Louis Southwestern Ry. Co. v. Burke,* 81 S.W. 774, 775 (Tex.App. 1904), where the court construes the phrase "reasonable degree of certainty" to "mean a higher degree of evidence than is furnished by a preponderance of the evidence." Therefore, for the jury to have concluded that the damages were proven to a "reasonable certainty" they necessarily had to find implicitly that they were proven well over the "reasonable probability" standard. As such, Hashimoto was not prejudiced by this error of instructing on the improper standard. The evidence was relatively specific and generally uncontroverted. The $4,500 jury compensatory award was solely general damages. The apparent medical expenses of $428 had been advanced in behalf of Marathon and Dixon, and by Instruction No. 13A, the jury was instructed not to include that amount in any award. Medical testimony referencing

injury from the first impact considered as physically minor in force, indicated that Hashimoto was "asymptomatic" and "essentially healed from the first impact" until the second significantly more severe impact occurred causing substantial aggravation as well as new injury. Considering the record presented, we do not find prejudicial error in the instructions since all evidence was available and the jury accorded a substantial verdict considering the relatively minor impact and injury.[11]

In summary, the phrase "reasonably certain" or "reasonable certainty" connotes freedom from doubt. Since none of us can see into the future, it appears quite illogical to attach such a standard to proving future pain and suffering in a personal injury case. The law is encumbered by human infirmities and thus should not reflect a standard that can only be met by a mind reader. Therefore, we find error in the standard of proof utilized in the jury instructions, but also find that Hashimoto was not prejudiced with respect to Instruction Nos. 13 and 14. Concerning Instruction No. 15, Hashimoto did not appropriately preserve this issue as a challenge in appeal for which reversal of the jury verdict is justified. Likewise, a plain error premise[12] for reversal is not denominated by the injury testimony presented to the jury as sufficient to demonstrate the miscarriage of justice character of a jury verdict decision. *Goggins*, 704 P.2d at 1291; *Bradley v. State*, 635 P.2d 1161, 1169 (Wyo.1981).

### 3. *Litigative Court Costs.*

■ The area of costs is a nebulous topic as found with reference within many statutes which include the word "costs" as never expressly defined. Additionally, this court has never considered this subject of the relative relation of rules of court in regard to the definition of allowable costs as related to the statutory provisions which provide that costs may be awarded.[13] This confusion is clouded in this case because in addition, a pretrial offer by Marathon and Dixon of judgment in accordance with W.R.C.P. 68 was made of $10,000 to include all costs accrued to offer date. That offer was not accepted and the case proceeded to trial resulting in the recovery of only the $4,500 in compensatory damages and $3,000 in punitive damages. In post-trial proceedings, both parties filed their bills of costs and each objected to what the other had submitted. Following hearing, the court awarded Hashimoto in final judgment his costs incurred to date of offer of judgment.[14] Consequently, to determine if the

**11.** Hashimoto settled for his injuries in the second collision in an amount which was apparently just below policy limits as totalling $49,500.

**12.** W.R.A.P. 7.05 provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**13.** W.S. 1–14–124 provides:
Costs shall be allowed to the plaintiff upon a judgment in his favor in an action for the recovery of money only or for the recovery of specific real or personal property, unless otherwise provided by law.
W.S. 1–14–126 provides:
In other actions the court may award and tax costs and apportion them between the parties on the same or adverse sides as it deems right and equitable. When a civil case is settled too late for the clerk of court to advise the jury panel that the jurors should not appear on the date summoned the court may order that any or all parties reimburse the proper fund for the fees and mileage paid to the jurors and bailiffs for their appearance.

W.R.C.P. 54(d) provides:
Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Wyoming, its officers or agencies, shall be imposed only to the extent permitted by law.

**14.** Defendants' costs for the deposition fee of Dr. Peter Beall in the amount of $187.50 and the reporting fees of the deposition of Dr. Beall in the amount of $69.16 and the reporting fee of the deposition of Lloyd K. Hashimoto in the amount of $213.74 be denied upon the grounds and for the reasons that said costs were incurred prior to the time of the Offer of Judgment on October 24, 1986.
* * * Defendants' costs for the pretrial telephone conference of Dr. Beall in the amount of $45.50 and the consultation fee prior to trial charged by Dr. John Sandeen in the amount of $50.00 be in the same is hereby denied for the reason that although incurred after October 24, 1986, the costs incurred in interviewing witnesses prior to trial are not proper costs; and

court abused its discretion in award of costs, it is necessary again to consider for disposition of the cross appeal what is properly included by case law and precedent to come within the term "allowable costs." Clearly within the confines of definition terms, the determination of allowable costs to be taxed pursuant to W.R.C.P. 54(d) is within the discretion of the trial court. *Duffy v. Brown*, 708 P.2d 433 (Wyo.1985). See also *Weaver v. Mitchell*, 715 P.2d 1361 (Wyo.1986), and for criminal cases, *Kaess v. State*, 748 P.2d 698 (Wyo.1987) and Note, *The Assessment and Collection of the Costs of a Criminal Prosecution in Wyoming*, 13 Wyo.L.J. 178 (1959).

By their cross appeal, Marathon and Dixon claim discretional error by the court in four items:

a. Discovery deposition costs awarded to Hashimoto for the deposition of co-defendant Morgan whose case was settled before trial. The amount involved if allocated from a joint bill would total $203.50;

b. Reduced witness fees for Dr. Sandeen, Marathon's and Dixon's medical witness, as ultimately approved on an hourly rate of $250 but applied only to the time of testimony and not "show up and wait" time

> * * * witness fee charged for Officer C. Woods of the Laramie Police Department in the amount of $60.00 is unreasonable in that Officer Woods is not an expert witness and a reasonable fee in this matter would be $15.00 per day. It appears that Officer Woods appeared in Court on two consecutive days, therefore, a witness fee in the amount of $30.00 is hereby granted; and
>
> * * * * * *
>
> * * * Defendants' are entitled to reimbursement of a reasonable witness fee charged by Dr. John Sandeen. It appears from the Court's records that Dr. Sandeen testified for a total of 127 minutes and although the doctor was present in the courtroom for a total of three hours, the Court finds that he is only entitled to a witness fee for the time spent in actual testimony. The Plaintiff has questioned the reasonableness of the doctor's charge of $250.00 per hour, therefore, the Court finds that the Defendants must submit proof as to the reasonableness of the doctor's charge for witness fee. Upon submission of such proof the Court will enter this witness fee's costs in the Final Judgment.
> (Based on affidavit evidence, the hourly rate of $250 was then approved in the final judgment.)

resulting in the billed total of $750 to be reduced by $221 to an award of $529;

c. Pretrial consultation time between Marathon's and Dixon's counsel and the medical witness of $50; and

d. Pretrial consultation by both counsel and Dr. Peter W. Beall as another medical witness of $45.50.

Consequently at issue in this cross appeal is allowed costs to Hashimoto of $203.50 and disallowed costs to Marathon and Dixon of $316.50, as totalling $520.

We will not yield to temptation by the broad scope of issue argument by litigants or the plethora of Wyoming case law touching on awardable costs to expand consideration for this opinion beyond the subject presented:

1. Discovery deposition costs of witnesses whose depositions were not used at trial but for whom the discovery was determined by the trial court to be reasonably necessary for case preparation; and

2. Witness fees of expert witnesses as allowable for trial time appearance only and excluding show up time and pretrial conference sessions with counsel.

■ Among the myriad of Wyoming piecemeal cases,[15] we would apply *Weaver*,

Hashimoto was awarded $806.49 as offset by Marathon's and Dixon's costs of $565 for a net recovery by Hashimoto of $241.49.

**15.** *Walker v. Graham*, 706 P.2d 278 (Wyo.1985); *Bowers Welding and Hotshot, Inc. v. Bromley*, 699 P.2d 299 (Wyo.1985); *Lebsack v. Town of Torrington*, 698 P.2d 1141 (Wyo.1985); *U.S. Through Farmers Home Admin. v. Redland*, 695 P.2d 1031 (Wyo.1985); *Anderson v. Foothill Industrial Bank*, 674 P.2d 232 (Wyo.1984); *Coulter v. City of Rawlins*, 662 P.2d 888 (Wyo.1983); *Anderson v. Meier*, 641 P.2d 187 (Wyo.1982); *State ex rel. Scholl v. Anselmi*, 640 P.2d 746 (Wyo.), cert. denied, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982); *Downing v. Stiles*, 635 P.2d 808 (Wyo.1981); *State Sur. Co. v. Lamb Const. Co.*, 625 P.2d 184 (Wyo.1981); *Buttrey Food Stores Division v. Coulson*, 620 P.2d 549 (Wyo.1980); *Roberts Const. Co. v. Vondriska*, 547 P.2d 1171 (Wyo.1976); *Combs v. Walters*, 518 P.2d 1254 (Wyo.1974); *Mader v. Stephenson*, 481 P.2d 664 (Wyo.1971); *Kalman v. Western Union Telegraph Co.*, 390 P.2d 724 (Wyo.1964); *Civic Ass'n of Wyoming v. Railway Motor Fuels*, 57 Wyo. 213, 116 P.2d 236 (1941); *In re Greybull Valley Irr. Dist.*, 52 Wyo. 168, 71 P.2d 801 (1937); *McInerney & Conway Finance Cor-*

715 P.2d 1361; *State v. Dieringer*, 708 P.2d 1 (Wyo.1985); and *Duffy*, 708 P.2d 433 as controlling.[16]

Applying current precedent to the specifics involved here as avoiding the generalized confusion obviously existent, it is directly concluded that:

1. Award of costs including subpoena, reporter and witness fees for discovery deposition is discretionary with the trial court as coming within the criteria of "reasonably required for trial preparation." *Weaver*, 715 P.2d 1361; *Dieringer*, 708 P.2d 1;

2. Expert witness fees as determined by the court to be reasonable in amount should include actual time for testimony and do not include charges of the experts for pretrial conferences or time during the trial session while waiting to actually testify.

In the absence of a defining rule or a controlling statute, it should be recognized that we do not deny the right to charge daily witness costs pursuant to W.S. 1–14–102 for witnesses who are attending court or deposition sessions under subpoena even though on particular days they may not testify. We limit the expert witness provision provided here to a higher hourly rate to be assessable against the opposing party only for the time that the expert may actually testify as the court may, in its discretion, limit the amount of the award by that restriction.[17] *Dieringer*, 708 P.2d 1. Cf. *Kaess*, 748 P.2d 698 and *Weaver*, 715 P.2d 1361. Consequently, we affirm the exercise of discretion by the trial court in award of costs from which the cross appeal was taken.

## SUMMARY

Since the trial court found that the discovery deposition of Morgan was reasonably necessary as, at that point in time he was still a party in the proceeding, it was appropriate for the costs of his discovery deposition to be assessed under the Dieringer standard for expert witness fees in accord with *Weaver*, 715 P.2d 1361. The trial court was justified in only assessing testimony time. In the same vein, the pretrial interview expenses were properly disallowed as preparation and not trial expenses.

**AFFIRMED.**

*poration v. Smith*, 42 Wyo. 380, 295 P. 273 (1931); *Board of Com'rs of Natrona County v. Board of Com'rs of Fremont County*, 40 Wyo. 144, 275 P. 102 (1929); *Eldridge v. Rogers*, 40 Wyo. 89, 275 P. 101 (1929); *Miller v. New York Oil Co.*, 34 Wyo. 272, 243 P. 118 (1926); *Wyoming Central Irr. Co. v. Laporte*, 26 Wyo. 522, 188 P. 360 (1920); *In re Organization of Bench Canal Drainage District*, 24 Wyo. 143, 156 P. 610 (1916); *Jenkins v. State*, 22 Wyo. 34, 134 P. 260 (1913); *City of Rawlins v. Murphy*, 19 Wyo. 238, 115 P. 436 (1911); *Pointer v. Jones*, 15 Wyo. 1, 85 P. 1050 (1906); *Lewis v. England*, 14 Wyo. 540, 85 P. 1049 (1906); *Matthews v. Nefsy*, 13 Wyo. 238, 78 P. 664 (1904); *Gramm v. Sterling*, 8 Wyo. 527, 59 P. 156 (1899); *Holgate v. Downer*, 8 Wyo. 334, 57 P. 918 (1899); *Rock Springs Nat. Bank v. Luman*, 5 Wyo. 159, 38 P. 678 (1894).

16. It is apparent from even a casual review of the some 31 Wyoming cases where allowable costs as a litigative expense had become an active appellant issue, that a demanding need exists for this court and the statutory rules advisory committee to develop a specific and determinate rule for ascertainment of costs which is amply justified by precedent and authority. Whether litigative costs should be awarded is a proper province for legislation. What those costs then include, although not necessarily beyond the authority of the legislature, are certainly found to be an authorized responsibility of the rule making function of the supreme court in its administrative responsibility for the justice delivery system pursuant to Wyo. Const. art. 5. In the absence of a rule or statute, the process will continue to be confused and irregular. The observation of Chief Justice Blume in *Board of Com'rs of Natrona County*, 275 P. at 103 has continued unabated that "the term [costs] is, it is true, an indefinite one, * * *." See also *Roberts Const. Co.*, 547 P.2d 1171.

17. W.S. 1–14–102 provides in pertinent part:

(b) In any civil or criminal case, any party may call expert witnesses to testify and if the court finds any witness to be a qualified expert and the expert gives expert testimony which is admitted as evidence in the case, the expert witness shall be allowed witness fees of twenty-five dollars ($25.00) per day or *such other amount as the court allows* according to the circumstances of the case. Expert witness fees may be charged as costs against any party or be apportioned among some or all parties in the discretion of the court. [Emphasis added.]

BROWN, Justice, Retired, specially concurring.

I agree with the majority that this case should be affirmed.

The majority determined that it was harmless error to use the phrase "reasonable certainty" in the instructions to the jury on future damages. I do not agree, however, that the phrase "reasonable probability" should be substituted for "reasonable certainty" in instructing the jury on future damages.

I agree with and adopt Justice Thomas' analysis in his dissent regarding the proper standard to be employed with respect to future damages. However, I would not reverse this case and believe the instructions given by the trial court were correct.

THOMAS, Justice, dissenting.

I am constrained to dissent from the disposition of this case according to the majority opinion. I am in agreement with the disposition of the issue relating to burden of proof with respect to successive injuries, and I have no difficulty joining in that aspect of the opinion addressing court costs. I cannot agree with the disposition of the standard with respect to proof of damages.

In Wyoming, we have a long-standing rule that damages cannot be the object of speculation or conjecture. E.g., *Reiman Construction Co. v. Jerry Hiller Co.*, 709 P.2d 1271 (Wyo.1985); *Krist v. Aetna Casualty & Surety*, 667 P.2d 665 (Wyo.1983); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978); *Opheim v. United Mobile Homes, Inc.*, 511 P.2d 1289 (Wyo.1973); *Blakeman v. Gopp*, 364 P.2d 986 (Wyo. 1961). This rule has been expressed by using the phrase "reasonable certainty" in our cases. In *Blakeman*, the phrase was invoked with respect to future damages.

We have, however, developed an anomaly in the law. We have adopted as elements of damages for personal injuries future pain and suffering, future loss of enjoyment of life, future loss of earnings, future medical expenses, and future caretaking. The majority of the court very perceptively note that "none of us can see into the future, * * *." Ante at 167. Accepting the truth of this statement requires a conclusion that the award of damages for those things to be experienced or incurred in the future inherently is speculative or conjectural. These future damages historically have been allowable to the extent that they were "reasonably certain" to be experienced or incurred. The use of the phrase "reasonable certainty" with respect to these elements of damage can best be perceived as an effort to balance the rule which says that damages cannot be the object of speculation or conjecture with the knowledge that damages for personal injuries do not necessarily end at trial, and yet future damages must be the object of speculation and conjecture. There perhaps is inherent wisdom in the use of the phrase "reasonable certainty."

The majority, as I understand this case, now proposes to substitute the standard of "reasonable probability" for "reasonable certainty." I suppose that is a choice that the court can make but, if it is to be made, then Hashimoto deserves the opportunity to have the jury consider his future damages according to the proper standard. I object to the conclusion that there is error, but it was not prejudicial because the court simply has substituted its own speculation or conjecture for that of the jury. Our usual rules of jurisprudence do not permit us to do that. Since the court is changing the standard, Hashimoto is entitled to have the damage award retried, and the case should be reversed.

I do not agree, however, that we should change the phrase. My analysis persuades me that a distinction is necessary when the jury is instructed about future damages as compared to past damages. With respect to the latter, I have no difficulty in agreeing with the use of the phrase "reasonable probability." That is simply another way of describing a burden of proof by a preponderance of the evidence. I might prefer to emphasize the preponderance of the evidence standard. When the problem of instructing with respect to future damages is contemplated, however, we must recognize that we are asking the jury to quantify

damages that, according to our legal standard, the jury cannot possibly award. If the phrase "reasonable certainty" is perceived as a legal standard, then truly we are presenting the jury with a concept that is antithetical to the rule that damages cannot be the object of speculation or conjecture. I am persuaded that without identifying the justification or the necessity, we have invoked the words "reasonable certainty" as a rhetorical phrase, a communicative device only, which serves to balance the inherently speculative nature of future damages with our legal standard that forecloses speculation in submitting those elements of damage to the jury.

While the instructions of the district court could have described this concept more precisely, they do not depart substantially from the approach that I believe to be correct. The judge did attach the limitation to future damages and did explain that such damages must be susceptible of ascertainment with a reasonable degree of certainty. The phrase was not used in instructing the jury except with respect to future damages. Consequently, I find no error with respect to these instructions. I would suggest the possibility of more precisely explaining to the jury why there is a difference between past and future damages. Perhaps such an explanation would eliminate the need to use the phrase "reasonable certainty." In the context of the instructions given in this case, which apparently came from the Wyoming Pattern Jury Instructions Civil, I am satisfied that the use of that phrase, when traced into the closing arguments of counsel, presents the most appropriate balance. It is not a legal standard but a communicative effort designed to ameliorate the clear departure from the usual rule that damages cannot be the object of speculation or conjecture. I would find no error with respect to these instructions.